UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANA LIZ and WALY FERREIRA,
individually, and on behalf of all others similarly situated,

       Plaintiffs,

    vs.

5 TELLERS ASSOCIATES, L.P., 5 TELLERS
HOUSING DEVELOPMENT FUND COMPANY,
INC., PARKVIEW APARTMENTS, LLC,
PROPERTY MANAGEMENT GROUP, INC., JOHN
VOLANDES, PETER VOLANDES, and all related
entities,

       Defendants.
-------------------------------------------------------------X

**COLLECTIVE AND
CLASS ACTION
COMPLAINT**

   Representative Plaintiffs ANA LIZ ("Liz") and WALY FERREIRA ("Ferreira")

(collectively, "Plaintiffs" and "Representative Plaintiffs") individually and on behalf of all

others similarly situated, as class representatives, upon personal knowledge as to

themselves and upon information and belief as to other matters, by their attorneys,

RAPAPORT LAW FIRM, PLLC and MILLER LAW, PLLC, as and for their Complaint,

allege:

## PRELIMINARY STATEMENT

**The Nature of Plaintiffs' Claims:**

   1.  This action is brought pursuant to the New York Labor Law ("NYLL")

Article 19 § 663, 12 New York Codes, Rules and Regulations ("NYCRR"), Part 141 and

NYLL Article 6 § 190 *et seq.*, the Fair Labor Standards Act ("FLSA"), and 29 U.S.C. §

207, to recover unpaid overtime wages, minimum wages, and other wages owed to

Plaintiffs and similarly situated co-workers – superintendents, porters and other building

maintenance workers – who have worked at apartment buildings owned and/or operated by defendants in New York City.

2.      This is a class/collective action, seeking unpaid wages, including minimum wage and unpaid overtime compensation and interest thereon, reimbursement for unlawful deductions, liquidated damages and other penalties, injunctive and other equitable relief and reasonable attorneys' fees and costs, under, *inter alia*, the FLSA §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

3.      This action further invokes diversity jurisdiction and the supplemental jurisdiction of this Court to consider claims arising under NYLL (*e.g.*, New York Wage Payment Act; NYLL §§ 191, 193, and 195; 12 N.Y.C.R.R. Part 141-1.9 and 2.10, and Part 142; and NYLL § 215).

**The 5 Tellers Enterprise:**

4.      At all relevant times, defendants 5 TELLERS ASSOCIATES, L.P. ("5 Tellers L.P."), 5 TELLERS HOUSING DEVELOPMENT FUND COMPANY, INC. ("5 Tellers HDFC"), PARKVIEW APARTMENTS, LLC ("Parkview Apartments"), were and still are a centrally managed, real estate enterprise (hereinafter the "5 Tellers Enterprise") that owns, controls, and manages apartment buildings (the "5 Tellers Buildings") in New York City, with a particular focus on buildings for which financing and/or subsidies are provided by New York State and City public agencies.

5.      At all relevant times, individual defendants John and Peter Volandes exercised direct and/or indirect ownership and control over the 5 Tellers Enterprise and the 5 Tellers Buildings, including, but not limited to, the buildings where the Representative Plaintiffs were employed.

6.      Upon information and belief, during the relevant time periods, the 5 Tellers Enterprise has employed more than fifty (50) superintendents, porters and handymen.

7.     Defendant Property Management Group, Inc. ("PMG") managed the 5 Tellers Buildings on behalf of the 5 Tellers Enterprise, and in this capacity, it exercised together with the 5 Tellers Enterprise, joint control and decision making over the terms and conditions of the Representative Plaintiffs' employment, including the wage policies and practices that are the subject of this Complaint.

8.     This Collective and Class Action seeks redress for state and federal wage violations that defendants, as joint employers, inflicted on superintendents, porters and other maintenance personnel who worked at the 5 Tellers Buildings during the applicable FLSA and NYLL statute of limitations periods.

9.     During the time period relevant to the Plaintiffs' and Class Members' causes of action, the 5 Tellers Enterprise was controlled by individual defendants Peter Volandes and John Volandes, who had the status of joint employers of superintendents, porters, handymen and other maintenance personnel who worked at the 5 Tellers Buildings during the applicable FLSA and NYLL statute of limitations periods.

10.     At all relevant times, the 5 Tellers Enterprise had a principal place of business at 4400 Second Avenue, Brooklyn, New York 11232, from which it owned, operated and managed the 5 Tellers Buildings under the same policies regarding the payment of wages to building maintenance employees, all under the control of John and Peter Volandes.

11.     Title to each of the 5 Tellers Buildings is vested in a nominally separate entity (collectively, the "Title-Holding Entities"), each of which is wholly owned and controlled by the 5 Tellers Enterprise, and each having individual defendants John and Peter Volandes as principals, authorized signatories and/or persons exercising de facto control over its operations.

3

12.     The 5 Tellers Enterprise has applied common employment practices, policies and procedures to superintendents and maintenance workers of the 5 Tellers Buildings, including, *inter alia*, the 5 Tellers Enterprise's practice of willfully refusing to compensate these employees for all hours worked beyond the first forty (40) hours of work per work week, and providing no compensation to building superintendents' family members, who, with defendants' knowledge, performed extensive work at the 5 Tellers Buildings.

13.     The 5 Tellers Enterprise carried out its common employment practices, policies and procedures by, *inter alia*, issuing directives that were communicated by property managers, who, upon information and belief, were also affiliated with PMG.

14.     The 5 Tellers Enterprise and PMG required that superintendents at the 5 Tellers Buildings remain on-call at their respective buildings from early morning through late at night. Among other things, the requirement that superintendents remain on-call was intended to ensure their availability to perform snow removal, provide building access to emergency responders, address leaks, handle tenant requests, and perform other unanticipated tasks.  Regardless of the time of day or night and/or day of the week when such work was needed, superintendents were paid fixed weekly and/or monthly sums, and they were not paid overtime compensation despite working substantially more than 40 hours per workweek in violation of the FLSA.

15.     Furthermore, the 5 Tellers Enterprise had a policy and practice of requiring unlawful deductions from wages, including the 5 Tellers Enterprise's requirement that superintendents, porters and handymen pay for tools used solely for the benefit of the defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry.  12 N.Y.C.R.R. § 141-1.9.

4

16.     The 5 Tellers Enterprise and PMG also had a common practice of issuing pay statements to workers that did not comply with the NYLL, including, among other omissions, failing to set forth hours worked and/or identifying the manner in which employees' weekly pay was calculated.

## JURISDICTION AND VENUE

17.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1137 because this case arises under the FLSA, 29 U.S.C. § 201 *et seq.*  The Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. §1367.

18.     Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because defendants transact business and have agents in the Eastern District, and the 5 Tellers Enterprise maintains its principal place of business in this District.   In public filings, entities comprising the 5 Tellers Enterprise identify their address as 4400 Second Avenue, Brooklyn, New York 11232.

19.     This Court has personal jurisdiction over the defendants pursuant to New York Civil Practice Law and Rules § 301 in that, *inter alia*, defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

## THE PARTIES

**Plaintiffs**

**Ana Liz ("Liz"):**

20.     Liz is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

5

21.    Beginning in or about May 2003 until November 1, 2019, Liz performed work at buildings located at 300 and 304 East 162nd Street, Bronx, New York ("300/304 East 162nd") which collectively had 42 apartments.

22.    During the six-year period preceding the filing of this Complaint, Liz performed porter duties at 300/304 East 162nd without receiving any compensation for the work that she performed.

**Waly Ferreira ("Ferreira"):**

23.    Plaintiff Ferreira is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

24.    Beginning in or about July 2012 until November 1, 2019, Ferreira worked at defendants' building, 1660 Crotona Park East, Bronx, New York 10460 ("1660 Crotona"), a 67-unit rental apartment building.

25.    Ferreira served as 1660 Crotona's superintendent, and he also performed duties that were beyond superintendent responsibilities, such as plastering, carpentry, flooring replacement and more.

26.    As alleged in further detail below, in a typical week, Ferreira's basic work schedule entailed a minimum of 65 hours of work per week, not including time spent on call and/or handling emergencies.

**Defendants**

**Peter Volandes and John Volandes:**

27.    Peter Volandes is an adult, natural person who, upon information and belief, resides in New York County, New York.

28.    John Volandes is an adult, natural person who, upon information and belief, resides in Suffolk County, New York.

6

29.     Upon information and belief, John and Peter Volandes maintain a principal place of business at 4400 Second Avenue, Brooklyn, NY 11232.

30.     Upon information and belief, at all relevant times, John and Peter Volandes were (and they continue to be) the most senior executives and owners with the most significant ownership interests in entities that comprise the 5 Tellers Enterprise, through which the 5 Tellers Enterprise invests in, owns and controls the 5 Tellers Buildings.

31.     Upon information and belief, records filed with the New York City Office of Housing Preservation and Development identify Peter Volandes as the most senior officer of defendant Parkview Apartments.

32.     In other publicly-filed documents, including mortgage instruments that were filed with the New York City Department of Finance, defendant John Volandes is identified as the "Managing Member" of Parkview Apartments, whose address is identified as c/o Volmar Construction Inc., (4400 Second Avenue, Brooklyn, NY 11232), a construction company that, upon information and belief, John Volandes founded several decades ago, and of which he is the President.

33.     Upon information and belief, John and Peter Volandes are liable for the wages of Plaintiffs and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

34.     Upon information and belief, John and Peter Volandes had (and continue to have) managerial and operational control over the 5 Tellers Enterprise's financial affairs and personnel policies, including, but not limited to, matters and policies pertaining to compensation of the 5 Tellers Enterprise's employees and overtime policies.

35.     John and Peter Volandes possessed operational control over the 5 Tellers Enterprise, and they exercised this control from their offices at 4400 Second Avenue, Brooklyn, New York 11232.

36.    John and Peter Volandes determined the terms of employment, wages and compensation of Plaintiffs, established their duties and schedules, and had ultimate decision-making authority for the hiring and firing of employees.

**Parkview Apartments:**

37.    Parkview Apartments is a corporation organized and existing under the laws of the State of New York.

38.    Upon information and belief, Parkview Apartments has a principal place of business at c/o Volmar Construction Inc., 4400 Second Avenue, Brooklyn, New York 11232.

39.    Parkview Apartments holds title to 1660 Crotona Park East, and it is one of the Title-Holding Entities.

**5 Tellers L.P.:**

40.    Upon information and belief, 5 Tellers L.P. is a New York limited partnership with offices at c/o Volmar Construction Inc., 4400 Second Avenue, Brooklyn, New York 11232.

41.    Upon information and belief, 5 Tellers L.P. was title holder of 300-304 East 162nd Street, Bronx, New York, where Liz and her husband performed work.

42.    Upon information and belief, on or about June 27, 2019, 5 Tellers L.P. transferred title of the foregoing buildings to 5 Tellers HDFC via a bargain and sale deed that was signed by Peter Volandes, acting as President of 5 Tellers, Inc., which, in turn, is general partner of  5 Tellers L.P.   Through this transaction, title was transferred to 5 Tellers HDFC, of which Peter Volandes is President.

**5 Tellers HDFC:**

43.    Upon information and belief, 5 Tellers HDFC is a New York not-for-profit corporation controlled by Peter and John Volandes, with a principal office located at c/o Volmar Construction, Inc., 4400 Second Avenue, Brooklyn, New York 11232.

44.    Upon information and belief, 5 Tellers HDFC has continuously held title to 300-302 East 162nd Street, Bronx, New York, from on or about June 27, 2019, to present.

**PMG:**

45.    Upon information and belief, the 5 Tellers Enterprise entered into a relationship with PMG whereby PMG exercised management responsibilities at the 5 Tellers Buildings, and they were directly involved and jointly responsible for determining the rates of pay, hours of work, and other terms and conditions of employment of employees of the 5 Tellers Buildings, including Plaintiffs.

46.    Work orders that were issued to Plaintiffs and other superintendents were issued by PMG, with letterhead that had PMG's phone number (718-796-9595), PMG's fax number (718-796-6601), and a blank space where PMG's personnel would hand-write the name of the Title-Holding Entity for the building where work was to be performed.

47.    In other instances, PMG would issue memoranda to superintendents from its fax number (718-879-6601), which identified the sender as "FROM: PMG INC." and had the generic letterhead "MANAGEMENT."

48.    Upon information and belief, PMG is a corporation organized and existing under the laws of the State of New York.

49.    Upon information and belief, PMG maintains its principal place of business at 3154 Albany Crescent, Bronx, New York 10463.

50.    Upon information and belief, PMG manages and oversees the wage practices of superintendents, porters and other maintenance workers at more than 50 buildings (the "PMG Buildings") in New York City.

51.    During most, if not all, of the period during which Plaintiffs were employed at their respective buildings, PMG co-managed and oversaw their employment, and in connection with its managerial role. PMG determined Plaintiffs' work hours and issued instructions to them regarding tasks to be performed.

52.    Simply by way of example, on April 7, 2016, PMG issued a memo to Ferreira directing him to perform an inspection of Apartment 6A at 1660 Corona Park East.

## CLASS ACTION ALLEGATIONS

53.    Plaintiffs bring this action individually and as a class action on behalf of all persons similarly situated and proximately damaged by defendants' conduct, including, but not necessarily limited to, the following Plaintiff Classes:

*FLSA Collective:*

54.    The FLSA Collective refers to all persons who are, or have been, employed as superintendents and maintenance workers at the 5 Tellers Buildings (the "FLSA Collective Plaintiffs") from three (3) years prior to this action's filing through the date of the final disposition who elect to opt-in to this action.

55.    This action claims that defendants violated the wage and hour provisions of FLSA by depriving Plaintiffs, as well as others similarly situated to Plaintiffs, of their lawful wages.  Upon information and belief, there are many similarly situated current and former superintendents, porters and maintenance workers of defendants who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join this lawsuit.

56.     At all relevant times, defendants are aware and have been aware of the requirements to pay Plaintiffs and FLSA Collective Plaintiffs: (a) federal minimum wage; and (b) one and one-half times their regular rates of pay for all hours worked each workweek above forty.  However, defendants chose not to do so.

57.     Defendants failed to pay Ferreira and other Superintendents for hours worked per workweek above forty in violation of the FLSA.

58.     Defendants failed to pay Liz and other porters and/or maintenance workers minimum wages for all hours worked.

59.     The FLSA Collective Plaintiffs are readily ascertainable, such information being in the possession and control of defendants.

60.     Plaintiffs and all similarly situated employees who elect to participate in this action seek unpaid minimum wage compensation (Liz), unpaid overtime (Ferreira), an equal amount of liquidated damages and/or prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

*The New York Class – Rule 23 Class Allegations:*

61.     The New York Class refers to all persons who are, or have been, employed as superintendents and maintenance workers at the 5 Tellers Buildings on or after the date that is six years before the filing of the Complaint in this case and the date of final judgment in this matter as defined herein.

62.     The Rule 23 Class Members are readily ascertainable.  The number and identity of the Rule 23 Class Members are determinable from the records of defendants. The positions held, and nature and extent of certain unlawful deductions from wages are also determinable from defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

11

63.    The defendants, their officers, and directors are excluded from the Classes, as well as all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

64.    This action has been brought and may properly be maintained as a class/collective action under Fed.R.Civ.P. Rule 23 and 29 U.S.C. §216 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable.

(a) Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the classes are so numerous that joinder of all members is impractical, if not impossible.  Membership in the Plaintiff Classes will be determined upon analysis of employee and payroll records, among other records maintained by defendants.

(b) Commonality: The Representative Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy.  Consequently, class certification is proper under Fed.R.Civ.P. Rule 23(b)(3) and 29 U.S.C. §216(b).   For example, the defendants' practice and policy of failing to comply with New York Labor Law requirements pertaining to wage notices and pay statements, as alleged above, applies to all members of the New York Class, and the relief demanded (including, *inter alia*, the demand for injunctive and declaratory relief) affects the entire class.  Similarly, the defendants' policy and practice of unlawful deductions is applicable class-wide and involves common legal and factual issues.

(c) <u>Typicality</u>: The Representative Plaintiffs' claims are typical of the claims of the Plaintiff Classes. The Representative Plaintiffs and all members of the Plaintiff Classes sustained injuries and damages arising out of and caused by defendants' common course of conduct in violation of state and federal law, as alleged herein. All of the Rule 23 Class Members were subject to the same corporate practices of defendants of failing to pay minimum wage and overtime compensation; unlawful wage deductions; violations of NYLL §195(3) by failing to issue wage statements to employees in the primary language of employees that correctly identified the name of the employer, address of employer, rates of pay or basis thereof, regular hourly rate, number of overtime hours worked; and violations of NYLL §195(1) by failing to provide to employees, upon hiring, a written notice in English and the employee's primary language setting forth the employee's rates of pay and basis thereof, the name of the employer, physical address of the employer's business, names used by the employer, and other legally-mandated disclosures.

(d) <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it, impractical for Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. This risk is particularly applicable here, in light of the demand herein for declaratory and

injunctive relief relating to NYLL § 195(1) and (3).  Moreover, the Representative Plaintiffs are informed and believe, and based thereon allege, that defendants, have acted and refused to act on grounds generally applicable to all claims, thereby making appropriate injunctive and monetary relief for all members of each class. Consequently, Class certification is proper under Fed.R.Civ.P. Rule 23(b)(2) and 29 U.S.C. § 216(b).

(e) <u>Adequacy of Representation</u>: The Representative Plaintiffs in this class action are adequate representatives of the Plaintiff Classes, in that the Representative Plaintiffs' claims are typical of those of the Plaintiff Classes and the Representative Plaintiffs have the same interests in the litigation of this case as the Class Members. The Representative Plaintiffs are committed to vigorous prosecution of this case, and have retained competent counsel, experienced in employment litigation of this nature, who have demonstrated diligence in investigating the facts relevant to the claims of the Representative Plaintiffs and putative Class Members.  The Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to the Class as a whole.

Upon information and belief, defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct retaliation or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment and future efforts to secure employment.  Class actions provide Rule 23 Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while reducing these risks.

## COMMON FACTUAL ALLEGATIONS

65.    As described herein, defendants have, for years, knowingly failed to adequately compensate those employees within the class definitions identified above for wages, including overtime wages due, under the FLSA (29 U.S.C. §§ 206 and 207) and NYLL (Article 19), and unlawfully deducted sums from wages in violation of the New York Wage Payment Act, Labor Law § 190, et seq., the New York Labor Law § 650, et seq., and New York Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.  Among other means, defendants engaged in unlawful business practices by requiring employees to work numerous hours of overtime on a daily and/or weekly basis without overtime compensation.  In addition, defendants took unlawful deductions from the wages of Ferreira and other building superintendents by requiring them to pay the cost of tools and supplies.

66.    Upon information and belief, defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

67.    At all relevant times, defendants employed Liz, Ferreira and each of the FLSA Collective members within the meaning of the FLSA.

68.    At all relevant times, defendants employed Liz, Ferreira and each of the New York Class members within the meaning of the NYLL, §§ 2 and 651.

69.    Defendants employ employees at their places of business in the activities of an enterprise engaged in commerce, including employees handling, selling or otherwise working on goods or materials that have been moved or produced for commerce.  The enterprise has an annual gross volume of sales made or business done in an amount not less than $500,000.  Therefore, the employees are employed in an enterprise engaged in commerce within the meaning of section (3)(s)(1)(A) of the FLSA.

70.     At all relevant times, the 5 Tellers Enterprise and its constituent entities, were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, operating a group of more than fifty (50) apartment buildings that are nominally titled in different corporate names but which are under the ultimate ownership and control of Peter and John Volandes.

### *Defendants Constitute Joint Employers*

71.     All of the defendants had the power to hire and fire Representative Plaintiffs and putative Class Members, supervised and controlled Representative Plaintiffs' and putative Class Members' work schedules and conditions of employment, determined the rate and method of paying Representative Plaintiffs and putative Class Members and maintained Representative Plaintiffs' and putative Class Members' employment records.

72.     The Representative Plaintiffs are informed and believe that at all relevant times, the 5 Tellers Enterprise functioned in a unified manner, including as follows:

(a) Ultimate control of 5 Tellers Buildings is exercised by John and Peter Volandes.

(b) Though the 5 Tellers Buildings are titled in different corporate/partnership names, John and Peter Volandes have substantial ownership interests in the entities that nominally hold title to the 5 Tellers Buildings.

(c) Buildings of the 5 Tellers Enterprise are centrally managed.

(d) The 5 Tellers Enterprise issues uniform personnel policies and directives to its maintenance personnel, either through its field managers or other managerial personnel.

(e) Transfer of interests between the intertwined entities that hold title to the 5 Tellers Buildings takes place without consideration, and is done at the sole whim of John and Peter Volandes.  Solely by way of example, on June 27, 2019,  defendant 5 Tellers L.P. conveyed title of 300, 302, 304 and 306 East 162nd Street, Bronx, New York to 5 Tellers HDFC.  Individual defendant Peter Volandes exercises ownership and control over both 5 Tellers L.P. and the transferee, 5 Tellers HDFC.

73.     Defendants, including both the 5 Tellers Enterprise and PMG, each had either functional and/or formal control over terms and conditions of work and over the

policies and practices with respect to the employment and compensation of the Plaintiffs and Class Members.

74.    Defendants employ or employed Plaintiffs, and are or were Plaintiffs' employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

75.    Upon information and belief, the corporate defendants 5 Tellers Associates L.P., 5 Tellers Development Fund Company, Inc. and Parkview Apartments, are either alter egos of each other, and/or these corporate defendants failed to operate as entities legally separate and apart from themselves by, among other things:

(a) Failing to adhere to the corporate formalities necessary to operate corporate defendants as corporations;

(b) Defectively forming or maintaining corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c) Operating corporate defendants for their own benefit and maintaining control over these corporations as close corporations, all as part of the same residential real estate enterprise that ultimately benefitted John and Peter Volandes; and

(d) Other actions evidencing a failure to adhere to the corporate form.

76.    Upon information and belief, John and Peter Volandes run the business of all of the 5 Tellers Enterprise as one operation, and their operations were interrelated and united.

77.    Consistent with their policies and patterns or practices, defendants harmed Plaintiffs individually, as set forth below.

**Liz:**

78.    Throughout the entire period of her employment, Liz worked as a part of a two-person maintenance team at 300/304 East 162nd that consisted of Liz (as porter) and her husband (as superintendent).  Liz, her husband, and their two children have long resided together in the basement of 304 East 162nd Street.

79.     300 East 162nd Street and 304 East 162nd Street are each five-floor rental apartment buildings, each with 21 apartment units, plus a basement living area where Liz and her family resided.

80.     Liz' duties included, *inter alia*: taking out and sorting garbage and recyclables; sweeping and mopping; cleaning the exterior areas in the back and front of 300/304 East 162nd; and assisting her husband with various maintenance tasks, such as helping him with painting.

81.     In a typical week, Liz worked: (a) on Monday through Friday, between three and four hours per day; and (b) on Sundays, approximately two hours for preparing garbage/recycling.

82.     Defendants failed to pay Liz *any* wages or other monetary sums.

83.     Although defendants issued paychecks that were made payable to Liz, these checks were earmarked solely for the work of Liz' husband, who was superintendent of 300/304 East 162nd Street, and who had primary responsibility for its maintenance.

84.     Liz' duties primarily involved cleaning the building and handling garbage/recyclables, and assisting her husband with certain projects that were particularly labor-intensive.

**Ferreira:**

85.     Ferreira is a former employee of defendants.  He performed maintenance, apartment renovations and other construction work at 1660 Crotona.

86.     Ferreira seeks to represent an FLSA collective and R.23/FLSA class of similarly situated individuals under 29 U.S.C. § 216(b).

87.     In performing his duties, Ferreira regularly handled goods in interstate commerce that were produced outside of the State of New York, such as brooms, mops, cleaning supplies, hand tools, paints and painting supplies.

88.    Ferreira's duties included, among other tasks, cleaning, mopping, repairing, plastering, plumbing, accepting oil deliveries and supplies, communicating with tenants, sweeping the sidewalk, sorting and removing recycling and garbage, cleaning the elevator, removing discarded items from newly-vacated apartments, replacing pipes, installing kitchen appliances including stoves and refrigerators, fixing bathroom and kitchen faucets, handling leaks, repairing radiators, fixing windows, replacing fire alarms in apartments, replacing sinks, communicating with contractors, and providing access to emergency responders, including police, ambulance and fire personnel.

89.    Ferreira was required to be on-call at all hours to address reoccurring emergent issues at 1660 Crotona, including, solely by way of example: handling clogged toilets; in the event of overnight leaks, investigating and shutting off the flow of water; helping residents who misplaced keys gain access to their apartments; and shoveling snow.

90.    At all times of year, the boiler would persistently malfunction at all hours, requiring Ferreira to adjust it because its automatic functions did not operate correctly.

91.    Tenants contacted Ferreira by his cellular telephone or by knocking on his apartment door at all hours of the day and night.  Ferreira's supervisor, Orlando Carpio, instructed Ferreira that Ferreira was required to be on-call 24 hours per day, 7 days per week, to handle emergent requests.

92.    Ferreira's regular work schedule (not accounting for emergent issues that arose at night and on weekends or hours spent on-call) was: (a) from 7:00 a.m. until approximately 5:30 p.m. Mondays through Fridays; and (b) 4 hours each on Saturdays and Sundays (58.5 hours per week).

93.    When there were emergencies at 1660 Crotona, Ferreira worked far more than 58.5 hours per week.  Simply by way of example, in the summer of 2018, there was an emergency affecting apartment 4K, which involved a ceiling collapse due to a leak.

Ferreira attended to the emergency overnight, and he spent the following days performing ceiling repairs.

94.     Throughout his employment, Ferreira was always paid by check.

95.     Defendants did not instruct Ferreira to record the number of hours that he worked each week.  Instead, they compensated him with a flat sum ($560.00 per week), which covered only his first forty hours of work per week, with no payment whatsoever for overtime hours.

96.     Ferreira was subjected to unlawful wage deductions, including being required to pay for work-related expenses out of his own wages without reimbursement.    These tools that Ferreira provided, for which he was never reimbursed, included, *inter alia*: saw; drill; and tools for electrical work.

97.     Defendants failed to provide Ferreira with proper wage statements that accurately reflected the amount of hours that he worked each week.

### AS AND FOR A FIRST CAUSE OF ACTION
### FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.*
### (On Behalf of Ferreira and the FLSA Collective)

98.     Plaintiffs incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

99.     At all relevant times hereto, the defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed members of the FLSA Class as superintendents, employment positions which engaged the employees in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).  At all times relevant hereto, defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

100.     Representative Plaintiffs are informed and believe, and thereon allege, that defendants have required, or require, the FLSA Class Members as part of their employment

to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1). That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

101.    Indeed, in the performance of their duties for defendants, members of the FLSA Class routinely worked over substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services they provided to defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207. The precise number of unpaid overtime hours will be proven at trial.

102.    Ferreira proposes to undertake appropriate proceedings to have such FLSA Class Members aggrieved by defendants' unlawful conduct notified of the pendency of this action and join this action as Plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to joinder with the Court.

103.    Defendants' overtime violations of the FLSA were willful, within the meaning of 29 U.S.C. § 255(a).

104.    Defendants have a policy and practice of refusing to pay overtime compensation to Ferreira and other superintendents.

105.    As a result of the foregoing, Ferreira seeks judgment against defendants on his own behalf, and on behalf of those FLSA Class Members similarly situated who file written consents to joinder in this action, for all unpaid wages, including minimum wage and overtime wages owed by defendants to Ferreira and the FLSA Class, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

### AS AND FOR A SECOND  CAUSE OF ACTION
**FLSA Minimum Wage Violations**
**(On Behalf of Liz, Individually, as well as the FLSA Collective)**

106.    Liz repeats and realleges all paragraphs above as though fully set forth herein.

107.    At all times relevant to this action, defendants were Liz' employers and employers of the putative FLSA class members within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

108.    At all times relevant to this action, defendants were engaged in commerce or in an industry and/or activities affecting commerce.

109.    Defendants failed to pay Liz and the putative FLSA collective members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

110.    Defendants' failure to pay Liz and the putative FLSA collective members at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

111.    As a result of the foregoing, Liz seeks judgment against defendants on her own behalf, and on behalf of those FLSA Class Members similarly situated who file written consents to joinder in this action for unpaid minimum wages owed by defendants to Ferreira and the FLSA Collective, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION
**New York Labor Law – Overtime Wages**
**(On Behalf of Ferreira and the New York Class – FRCP Rule 23)**

112.    Ferreira repeats and realleges each and every allegation contained in the foregoing paragraphs, with the same force and effect, as if fully alleged herein.

113.    Defendants employed Ferreira and other superintendents for workweeks longer than forty (40) hours and willfully failed to compensate them for the time worked in

excess of forty (40) hours per week, at a rate of less than one and one-half (1 and ½) times the regular hourly rate, in violation of the requirements of the NYLL.

114.    By the course of conduct set forth above, defendants have violated N.Y. Lab. Law § 650, et seq.; 12 N.Y.C.R.R. § 142-2.2.

115.    Defendants have a policy and practice of refusing to pay overtime compensation to superintendents and other building maintenance personnel.

116.    As a consequence of the willful underpayment of wages, alleged above, Ferreira and members of the New York Class have incurred damages thereby and the defendants are indebted to them in the amount of unpaid overtime compensation and such other legal and equitable relief from defendants' unlawful and willful conduct as the Court deems just and proper, including but not limited to liquidated damages, interest and attorneys' fees.

117.    Ferreira seeks to recover liquidated damages, attorneys' fees and costs to be paid by defendants as provided by the NYLL.

### AS AND FOR A FOURTH CAUSE OF ACTION
**Violations of the New York Minimum Wage Act**
**(On Behalf of Liz and the New York Class)**

118.    Liz repeats and realleges all paragraphs above as though fully set forth herein.

119.    At all relevant times hereto, defendants have been the employers of Liz and similarly-situated New York Class Members within the meaning of the NYLL §§ 2 and 651.

120.    Defendants knowingly and willfully paid Liz and similarly-situated class members less than the minimum wage in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

121.    Defendants failure to pay Liz and the New York Class the minimum wage has been willful within the meaning of the NYLL § 663.

122.    As a direct and proximate result of defendants' willful and unlawful conduct, as set forth herein, Liz has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Illegal Deductions, New York Labor Law, Article 19 § 193**
**12 N.Y.C.R.R. § 2.10(a)**
**(On Behalf of Ferreira and the New York Class)**

123.    Ferreira incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

124.    In violation of the New York Labor Law, Article 19, § 193, defendants unlawfully deducted wages from Ferreira and the New York Class by requiring Ferreira and other Superintendents and maintenance workers to spend their own money on work-related expenses, including tools of the trade to complete mandated work.  This further reduced Ferreira's wages below the amounts required by the NYLL and FLSA.

125.    As a result of the foregoing, Ferreira seeks judgment against defendants on his own behalf, and on behalf of New York Class Members, for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from defendants' unlawful and willful conduct as the Court deems just and proper.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Declaratory Judgment**
**(FLSA Class and New York Class)**

126.    Plaintiffs, for themselves and on behalf of the FLSA Class and New York Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

24

127.    This action provides a ripe and justiciable case or controversy.

128.    It is just and equitable that the Court declares the rights and other legal relationships of the parties.

129.    Representative Plaintiffs, the FLSA Class and New York Class are entitled to a declaration that defendants acts are in violation of the FLSA and NYLL.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**
**(New York Class)**

130.    Representative Plaintiffs, on behalf of themselves and the New York Class members, repeat and re-allege and incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

131.    The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

132.    Throughout the Representative Plaintiffs' employment with defendants, defendants willfully failed to provide them and the New York Class with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

133.    Due to defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices
### (New York Class)

134.    Representative Plaintiffs, for themselves and on behalf of the FLSA Class and New York Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

135.    Defendants failed to provide Plaintiffs with a written notice, in English and Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL 195 §(1).

136.    As a result of defendants' failure to provide wage statements, Plaintiffs and members of the New York Class are entitled to collect from defendants $250 per workday that defendants' violation continues, up to $5,000.00, together with reasonable attorneys' fees, and costs of disbursements of the action, pursuant to the NYLL § 198(1-b).

## RELIEF SOUGHT

**WHEREFORE,** the Representative Plaintiffs, Waly Ferreira and Ana Liz, on behalf of themselves and the FLSA Collective and the New York Class, respectfully request that the Court grant the following relief:

1.    Designation of this action as a collective action on behalf of the FLSA Class members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the FLSA Collective Members;

2.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the New York Class members and appointing Plaintiffs and their counsel to represent the class;

3.      An order tolling the statute of limitations;

4.      That the Court declare, adjudge and decree that defendants violated the minimum wage provisions of the FLSA as to the Representative Plaintiff Liz and the FLSA Collective;

5.      That the Court declare, adjudge and decree that defendants violated the minimum wage provisions of the NYLL as to the Representative Plaintiff Liz and the New York Class;

6.      That the Court declare, adjudge and decree that defendants violated the overtime wage provisions of the FLSA as to the Representative Plaintiff Ferreira and the FLSA Collective;

7.      That the Court declare, adjudge and decree that defendants willfully violated their legal duties to pay overtime compensation as required under the NYLL as to the Representative Plaintiff Ferreira and the New York Class;

8.      That the Court declare, adjudge and decree that Representative Plaintiff Ferreira and the FLSA Collective Members were at all times relevant hereto, and are, entitled to be paid overtime for work beyond 40 hours in a week remuneration for unlawful deductions; and that the amounts to which Representative Plaintiff Ferreira, the FLSA Collective and the New York Class are entitled is to be doubled as liquidated damages and awarded thereto;

9.      That the Court make an award to the Representative Plaintiffs, the FLSA Class and the New York Class of damages and/or restitution for the amount of unpaid compensation, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial;

10.     That the Court make an award to Ferreira and the New York Class of reimbursement for all unlawful deductions;

11.    For all other Orders, findings and determinations identified and sought in this Complaint;

12.    For pre-judgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate, under the NYLL and CPLR;

13.    For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law;

14.    Declaring that defendants violated the notices and record keeping provisions of NYLL and WTPA;

15.    An award of statutory damages for defendants' failure to provide accurate wage statements pursuant to NYLL § 198(1-d);

16.    An award of statutory damages for defendants' failure to provide proper and/or accurate wage notices pursuant to NYLL § 198(1-b);

17.    A permanent injunction requiring defendants to pay all statutorily required wages pursuant to the FLSA and NYLL; and

18.    Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.


Dated: January 10, 2020                    **RAPAPORT LAW FIRM, PLLC**


By:                    /s/
_____
Marc A. Rapaport, Esq.
One Penn Plaza
250 West 34th Street, Suite 2430
New York, NY 10119
Ph: (212) 382-1600
mrapaport@rapaportlaw.com

MILLER LAW, PLLC

By:             /s/
        _____
        Meredith R. Miller, Esq.
        167 Madison Avenue, Suite 503
        New York, NY  10016
        Ph: (347) 878-2587
        meredith@millerlaw.nyc

        *Attorneys for Plaintiffs Waly Ferreira, Ana Liz, and
        the Plaintiff Collective and Class*