UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANA LIZ and WALY FERREIRA,                                   Case No: 20-CV-0212
individually, and on behalf of all others similarly situated,


                                                        Plaintiffs,

                    - against -


5 TELLERS ASSOCIATES, L.P., 5 TELLERS HOUSING
DEVELOPMENT FUND COMPANY, INC., PARKVIEW
APARTMENTS,  LLC,  PROPERTY  MANAGEMENT
GROUP, INC., JOHN VOLANDES, PETER VOLANDES,
and all related entities,


                                                        Defendants.
------------------------------------------------------------------------X




**MEMORANDUM OF LAW OF PROPERTY MANAGEMENT GROUP, INC. IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**




**BOYD RICHARDS PARKER & COLONNELLI, P.L.**
*Attorneys for Property Management Group, Inc.*
1500 Broadway, Suite 505
New York, New York 10036
(212) 400-0626

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ……………………………………….…………………1

**STATEMENT OF FACTS**....………………………………….....…………………………3

**ARGUMENT**

       *Legal Standard*………………………………………….……………………......9

       *Plaintiffs Have Not Demonstrated That The Proposed Class Members
Are Similarly Situated As It Relates To A Common Policy And Practice
Pertaining To Their Employment, Hours and Wages*……………………….……...12

       *Plaintiffs Have Not Demonstrated That The Proposed Class
Members Are Similarly Situated As It Relates To Their Employers*………...………..14

       *Granting This Motion Would Necessitate
The Addition of 24 Necessary Parties*………………….…………….……......……..…..17

**CONCLUSION** ………………………………….……………………….....…..……18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Page(s)

*Doucoure v. Matlyn Food, Inc.*,
    554 F. Supp. 2d 369 (E.D.N.Y. 2008) ................................................................. 10

*Garriga v. Blonder Builders Inc.*,
    2018 U.S. Dist. LEXIS 171887 (E.D.N.Y. Sept. 28, 2018) ................................. 10

*Guaman v. 5 "M" Corp.*,
    2013 U.S. Dist. LEXIS 152379 at *3 (S.D.N.Y. 2013) ...................................... 10

*Guan Ming Lin v. Benihana Nat'l Corp.*,
    755 F. Supp. 2d 504 (S.D.N.Y. 2010) ................................................................. 10

*Ikikhueme v. CulinArt, Inc.*,
    2013 U.S. Dist. LEXIS 77720 (S.D.N.Y. 2013) ..................................... 11, 13. 14

*Jenkins v. TJX Companies Inc.*,
    853 F. Supp. 2d 317 (E.D.N.Y. 2012) ................................................................. 10

*Khan v. Airport Mgmt. Servs., LLC*,
    2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. Nov. 16, 2011) ................................. 10

*Korenblum v. Citigroup, Inc.*,
    195 F. Supp. 3d 475, 2016 U.S. Dist. LEXIS 94220 (S.D.N.Y. 2016) ......................... 10, 12

*Laroque v. Domino's Pizza, LLC*,
    557 F. Supp. 2d 346 (E.D.N.Y. 2008) ................................................. 11, 13, 14

*Levinson v. Primedia Inc.*,
    2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. 2003) ..................................... 11, 13, 14

*Morales v. Plantworks, Inc.*,
    2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. 2006) ................................................... 10

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) .......................................................................... 9, 10

*Oscar v. BMW of N. Am.*,
    274 F.R.D. 498, 2011 U.S. Dist. LEXIS 62601 (S.D.N.Y. 2011) ....................... 14

*Prizmic v. Armour, Inc.*,
    2006 U.S. Dist. LEXIS 42627 at *3 (E.D.N.Y. 2006) ....................................... 10

*Puglisi v. TD Bank, N.A.*,

    998 F. Supp. 2d 95 (E.D.N.Y. 2014) ...................................................................... 9

*Sanchez v. JMP Ventures, L.L.C.*,

    2014 U.S. Dist. LEXIS 14980 (S.D.N.Y. 2014)..................................................... 11, 13, 14

*Taveras v. D & J Real Estate Mgmt. II, LLC*,

    324 F.R.D. 39 (S.D.N.Y. 2018) ............................................................................ 11, 13, 14

*Urresta v. MBJ Cafeteria Corp.*,

    2011 U.S. Dist. LEXIS 120126 (S.D.N.Y. 2011) ................................................... 14-15, 16

***Statutes***

29 U.S.C. § 216 ....................................................................................................... 9

## PRELIMINARY STATEMENT

Defendant Property Management Group, Inc. ("PMG") respectfully submits this memorandum of law in opposition to Plaintiffs' motion for conditional certification of a class action.

In order for Plaintiffs to obtain conditional certification, they must demonstrate that the putative class members are "similarly situated," in that they were victims of a common wage policy or plan that violated the law.  While this burden is modest, it remains a burden Plaintiff must carry. Plaintiffs must provide specific, non-conclusory allegations which illustrate the relationship between the Plaintiffs and the proposed class members. Although a plaintiff's own declaration *can* be sufficient to meet this burden, the declaration must detail the Plaintiffs' own observations and conversations with other employees, including when and where they occurred, and the full names of the proposed class members involved.

Plaintiffs herein have utterly failed to meet this burden. First, Plaintiffs' declarations are devoid of any specific allegations necessary to obtain conditional certification. With just one exception, Plaintiffs fail to identify a single class member by name, fail to claim that they have spoken with any of the proposed class members, and fail to claim that Plaintiffs have *any* knowledge as to how many hours the yet unidentified putative class members worked or what the putative members were paid. As to the exception, Plaintiffs claim to have spoken with one "Robinson," with whom they allege to have ridden to the airport, yet whose last name they do not know.  They allege that during that ride he advised Plaintiffs that he worked long hours and was not paid overtime. In support of the instant opposition though, Robinson Morel submits a declaration not only denying these allegations but declaring that he does not work overtime, has no complaint about his wages, and has no interest in joining this suit.

4

The 13 other declarations submitted in opposition to this motion illustrate that Plaintiffs have absolutely no knowledge of the proposed class members. These declarations all state that the declarants do not work more than 40 hours a week, are not owed overtime and have no desire to opt into this litigation. In fact, the declarations make clear that Plaintiffs have *nothing* in common with the potential class members. They have different employers, different responsibilities, work different hours and operate under different work policies.

Specifically, the entities that employ the proposed class members are not the same as Plaintiffs' employers here (that being, 5 Tellers).[1]  Indeed, Plaintiffs do not even attempt to argue that these entities are related in any way to 5 Tellers so as to consider them "joint employers" and thus could have a "common policy or plan", as is required for conditional certification. In fact, Plaintiffs actually acknowledge this defect. Through the Complaint, Plaintiffs define the appropriate class members as those who were employed by 5 Tellers, at buildings that are managed by PMG. Indeed, such employees would meet the commonality and typicality elements of a class action. But realizing this class would not be lucrative enough, Plaintiffs now inappropriately attempt to broaden the class to *any* building that is PMG-managed, with completely unrelated building owners (the true employers of these superintendents). The ownership entities' complete lack of relationship with those parties to this suit is fatal to this motion.

It must finally be noted that Plaintiffs' proposed class - - although inflated to seem much larger - - in actuality is comprised of 19 superintendents. Those superintendents were employed by 24 different entities, <u>none</u> of which are currently named as defendants in this lawsuit. If conditional certification was granted, these 24 entities would be necessary parties to this action.

---

[1]     The co-defendants, 5 Tellers Associates, LP, 5 Tellers Housing Development Fund Company, Inc., Parkview Apartments, LLC, John Volandes and Peter Volandes, are collectively referred to herein as "5 Tellers".

Adding 24 additional defendants entirely defeats the purpose of a class action, which is to streamline litigation. For this additional reason, the motion must be denied.

<u>**STATEMENT OF FACTS**</u>

Co-defendants 5 Tellers Associates, LP, 5 Tellers Housing Development Fund Company, Inc., Parkview Apartments, LLC, John Volandes and Peter Volandes (collectively, "5 Tellers") employed Plaintiffs in this action as live-in superintendents/janitors. 5 Tellers hired and fired superintendents for their buildings, determined their rates of pay, responsibilities and otherwise controlled the terms and conditions of their employment. [Victor Owen Dec., ¶ 2]. According to the Complaint, 5 Tellers operated common employment practices, policies and procedures for all of its buildings and specifically for its superintendents and other maintenance workers. [Exhibit A, ¶¶ 12-14].

As is relevant to this motion, Plaintiff Waly Ferreira was the superintendent of a 5 Tellers' owned  building located at 1660 Crotona Park East, Bronx, New York, from approximately July 2012 to approximately November 1, 2019. [Exhibit A, ¶ 24]. Opt-in Plaintiff Mario Villanueva was the superintendent of a 5 Tellers' owned building located at 819, 821 and 823 East 173rd Street in the Bronx, from April 2010 until November 1, 2019. [Rapaport Dec., Exhibit I]. From approximately 2009 to approximately November 1, 2019, Op-in Plaintiff Jonny Bonilla worked as superintendent of another 5 Tellers' owned building located at 1680 Crotona Park East in the Bronx. [Rapaport Dec., Exhibit J]. Opt-in Plaintiff Francisco Liz was a superintendent at a 5 Tellers' building located at 300 and 306 East 162nd Street in the Bronx, from July 2003 through November 1, 2019. [Rapaport Dec., Exhibit K].[2]  Each of these Plaintiffs reported to, and were supervised by, a 5 Tellers' employee named Orlando Carpio.

---

[2]     Plaintiff Ana Liz acknowledges that, as a porter, she asserts claims only in her individual capacity and not as a putative class/collective representative.

6

It is alleged that during the relevant time-periods, the 5 Tellers' buildings were managed by PMG, a professional management company.  Although not an issue for this motion, PMG provided "back office" services, pursuant to a written management agreement, *i.e.*, collected rent from 5 Tellers' tenants and performed other ministerial activities. [Victor Owen Dec., ¶ 3]. The relationship between 5 Tellers and PMG was terminated by 5 Tellers on or about October 31, 2019.

The complaint filed on January 10, 2020 alleges, *inter alia*, that 5 Tellers and PMG were joint employers who were jointly responsible for setting employment policies, determining the Plaintiffs' rates of pay, hours of work and other terms and conditions of employment [Exhibit A, ¶ 45].  Plaintiffs further allege that they were required to remain on call for their respective properties from early morning to late at night, that they were responsible for snow removal, providing access to emergency responders, fixing leaks, making repairs in tenant apartments and other unanticipated tasks.  [Exhibit A, ¶ 14].  Plaintiffs further allege that they worked substantially more than 40 hours per week but were not paid for any overtime hours that they worked. [Exhibit A, ¶¶ 57, 92 - 93].

The Complaint was filed as a class and collective action.  In doing so, Plaintiffs alleged that this action was commenced on behalf of all individuals similarly situated to them and who were damaged by "defendants' conduct," *i.e.*, 5 Tellers and PMG.  [Exhibit A, ¶ 53].   As to the anticipated class, it was defined as:

- The FLSA Collective refers to all persons who are, or have been, employed as superintendents and maintenance workers <u>at the 5 Tellers Buildings</u> from three (3) years prior to this action's filing through the date of the final disposition who elect to opt-in to this action.

- The New York Class refers to all persons who are, or have been, employed as superintendents and maintenance workers <u>at the 5 Tellers Buildings</u> on or after the date that is six years before the filing

of the Complaint in this case and the date of final judgment in this
matter as defined herein.

[Exhibit A, ¶¶ 54, 61].

Furthermore, Plaintiffs generically alleged that, among other things: (a) the purported class members are so numerous that joinder is impractical, if not impossible; (b) that there is commonality amongst Plaintiffs and potential class members and specifically; (c) that 5 Tellers and PMG had a joint practice and policy of failing to comply with the law; and (d) that Plaintiffs and potential class action plaintiffs all sustained injuries arising out of and caused by 5 Tellers and PMG's common policies. [Exhibit A, ¶ 64].

Despite the Complaint's allegations though, Plaintiffs seek to certify a class which, contrary to the Complaint's allegations, is entirely distinct from and has nothing in common with the Plaintiffs themselves.  Most glaring, Plaintiffs' employer - - 5 Tellers - - employs none of the proposed class members.  Flowing from this: (a) none of the proposed plaintiffs work at the same location as or with any of the Plaintiffs; (b) none of the proposed plaintiffs work at a 5 Tellers' property; and (c) there can be no common policy or practice since 5 Tellers does not employ any of the potential class members.

Indeed, in support of their motion, Plaintiffs have submitted fact-less declaration that do nothing more than repeat *pro forma* assertions designed to meet a check list of requirements necessary for conditional class certification.  Upon reviewing the facts, it is readily apparent that neither Plaintiffs, nor their counsel, have spoken with any of the potential class members, and accordingly know nothing about them, for whom they work, their employment terms, how many hours they work, or what policies govern their employment.  There is only one factor common to the Plaintiffs and the potential class members: that at one point or another, they worked at a property which PMG professionally managed, but at no time were they employed by PMG.

8

For example, Plaintiffs claim that 106 West 114th Street, 112 West 114th Street and 120 West 144th Street are three separate buildings with three different superintendents. [Rapaport Dec., Exhibit C]. This is not the case. These three addresses comprise one property and only one superintendent is employed at this location. [Victor Owen Dec., ¶ 8]. Plaintiffs repeat the same allegation with respect to 819 E 173rd Street, 821 E 173rd Street and 823 173rd Street. [Rapaport Dec., Exhibit C]. Again though, these three addresses belong to a single property, with one superintendent. [Victor Owen Dec., ¶ 8].

Plaintiffs make this very same erroneous assumption more than a dozen times, perhaps to inflate size of the proposed class, but which demonstrates their utter lack of knowledge of relevant facts. These facts clearly establish that there are no similarities between them and the proposed class members.

In their quest to try and obtain conditional class certification, Plaintiffs' Exhibit C identifies certain properties which supposedly have superintendents who work overtime, but are not paid overtime. But in fact, the following properties listed on Exhibit C have no superintendents:

- 503 West 138th Street (Manhattan);

- 2431 Adam C. Powell Blvd. (Manhattan);

- 2355 Eighth Avenue (Manhattan);

- 324 Pleasant Avenue (Manhattan);

- 3235 Hull Avenue (Bronx); and

- 186 Fifth Avenue (Brooklyn).

[Victor Owen Dec., ¶ 8].

Accounting for Plaintiff's faulty assumptions, Plaintiffs' list of 51 buildings (and thus assuming 51 superintendents making up the proposed class) is in actuality just 30 properties with 19 superintendents. [Victor Owen Dec., ¶ 7 - 8].

Plaintiffs' moving papers betray their total lack of knowledge of or communication with the proposed class members.  The vast majority of the superintendents do not work overtime, have no complaints about not being paid properly and ultimately, have no interest in opting into this lawsuit. [Exhibits B - O]. The attached 14 declarations establish that the vast majority of the proposed class members did not work overtime, are not owed wages, do not (or did not) work for 5 Tellers or PMG, are not subject to the common policies and practices that Plaintiffs claim they are subjected to and ultimately, have no interest in opting into this action. [Exhibits B - O].

It is apparent that Plaintiffs have no personal knowledge of the superintendents in the proposed class, their schedule and wages, or their intentions. In fact, other than one superintendent, Plaintiffs do not mention any of the proposed class members by name, nor do they claim they had any discussions with them about their schedule or wages or that they have any knowledge of this through other means.

With respect to the lone superintendent that Plaintiffs mention, they do not even know his full name. Plaintiffs refer to him as Robinson (*i.e.* Robison Morel). And as for Mr. Morel, Plaintiffs have resorted to proffering hearsay, consisting of a completely false conversation that they claim to have had with Mr. Morel. [Exhibit B]. According to Plaintiffs, they spoke with Mr. Morel on the way to the airport and during this conversation, he purportedly commiserated with them and told them that he worked long hours but was not paid overtime. Mr. Morel however was incensed by Plaintiffs story-telling, and thus submits his own declaration here to correct these falsehoods. [Exhibit B]. Specifically, Mr. Morel unequivocally states that:

- He does not know Ferreira;

- He never spoke to Ferreira or Villanueva about his schedule and wages;

- He never shared a ride with them to the airport, which during this phantom ride, Ferreira and Villanueva claim that Mr. Morel told them about his work-related complaints;

- He works less than 40 hours per week and doesn't work overtime;

- He was never denied overtime wages; and

- He has no relationship to Plaintiffs' employers, 5 Tellers, is employed by a different entity and does not know or have any relationship to 5 Tellers' supervisor (Orlando).

[Exhibit B].

Removing from Plaintiffs' declarations their false, hearsay statements about their conversation with Mr. Morel which never occurred, Plaintiffs offer no other factual statements much less admissible evidence about the purported class members to actually establish any of the necessary elements, including that they are similarly situated. Plaintiffs do not mention a single proposed class member by name, they do not claim that they have spoken to any other proposed class member or that they have any knowledge about how many hours the proposed class members work or what they are paid.

Lacking any factual detail much less admissible evidence in support of their motion, Plaintiffs have utterly failed to meet their burden. Regardless of their failure, Plaintiffs attempt to expand the proposed class well beyond that articulated in the Complaint (superintendents and maintenance workers employed by 5 Tellers and managed by PMG) to any building purportedly managed by PMG within the last six years, regardless of the principal that PMG worked on behalf of, who owned the buildings and who employed the potential class members. In fact, none of the buildings identified in Plaintiffs' proposed class list are owned by the 5 Tellers Defendants. [Victor

11

Owen Dec., ¶ 8]. Rather, they are owned by 30 other entities that have no legal relationship to the 5 Tellers Defendants. [Victor Owen Dec., ¶ 8].

Even if this new proposed class was appropriate (which it is not) Plaintiffs incorrectly allege that PMG manages "dozens of other apartment buildings located in Upper Manhattan and the Bronx County" (listed in Plaintiffs' Exhibit C). This number is grossly over inflated to give the false impression that PMG is a much larger property management company than it is.

## ARGUMENT

### *Legal Standard*

Pursuant to 29 U.S.C. § 216(b) of the FLSA, "[a]n action . . . may be maintained against any employer [. . .] by any one or more employees for and in behalf of himself or themselves and other employees similarly situated". 29 U.S.C. § 216(b). Such employees may participate as plaintiffs in the action only if they consent to join the lawsuit in writing. Id.; see also, Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014) (noting the "opt-in" process in a collective action).

To determine whether an action should be certified as a collective action, the Courts apply a two-step process: considering and if appropriate granting conditional certification; and later certifying the class. See Myers v. Hertz Corp., 624 F.3d 537, 544-45 (2d Cir. 2010) (noting that the district courts of this Circuit have "coalesced around a two-step method" of analysis of collective action certification).

Here, Plaintiffs' motion concerns only the first step and seeks conditional certification. To do so, Plaintiffs must demonstrate that the putative class members are "similarly situated" or, put differently, they must make a "modest factual showing sufficient to demonstrate that [Plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law."

12

Jenkins v. TJX Companies Inc., 853 F. Supp. 2d 317, 321 (E.D.N.Y. 2012) (*internal quotation marks omitted*); see also, Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008).

Although modest, Plaintiffs' burden at this stage is not nonexistent. See e.g., Garriga v. Blonder Builders Inc., 2018 U.S. Dist. LEXIS 171887, at *3 (E.D.N.Y. Sept. 28, 2018); Khan v. Airport Mgmt. Servs., LLC, 2011 U.S. Dist. LEXIS 133134, at *5 (S.D.N.Y. Nov. 16, 2011). It is well established that a modest factual showing "cannot be satisfied simply by 'unsupported assertions.'" Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010). Instead, the plaintiffs must assert sufficient facts that will enable the Court "to determine *whether* similarly situated plaintiffs do in fact exist." Id. (*emphasis in original*) (*internal quotation marks omitted*). Stated otherwise, the plaintiffs' supporting allegations "must be specific, not conclusory." Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010); see also Morales v. Plantworks, Inc., 2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. 2006) (quoting Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B Federal Practice and Procedure: Civil 3d § 1807, at 487-53 (2005)) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

In cases where plaintiffs fail to put forward *any* evidence that the proposed class is similarly situated, motions for conditional certification are denied as the burden "is and remains Plaintiffs' burden, and they cannot satisfy a "not non-existent" burden with non-existent evidence". Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 2016 U.S. Dist. LEXIS 94220 (S.D.N.Y. 2016) *citing* Khan v. Airport Mgmt. Servs., LLC, 2011 U.S. Dist. LEXIS 133134 at *4-5 (S.D.N.Y. 2011); Guaman v. 5 "M" Corp., 2013 U.S. Dist. LEXIS 152379 at *3 (S.D.N.Y. 2013); Prizmic v. Armour, Inc., 2006 U.S. Dist. LEXIS 42627 at *3 (E.D.N.Y. 2006).

13

Even "[w]hen plaintiffs base their assertions regarding similarly situated employees upon their own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of the employees involved." Garriga v. Blonder Builders Inc., 2018 U.S. Dist. LEXIS 171887 (E.D.N.Y. 2018) *citing* Benavides v. Serenity Spa NY Inc., 166 F. Supp. 3d 474, 481-82 (S.D.N.Y. 2016); Taveras v. D & J Real Estate Mgmt. II, LLC, 324 F.R.D. 39, 45 (S.D.N.Y. 2018).

In fact, "Courts in this Circuit often restrict the scope of a proposed collective or deny conditional certification because of a failure to identify other co-workers by name and title, provide the specifics of conversations with those employees, or note details of other employees' working conditions and hours." Taveras, supra, 324 F.R.D. at 45. See Sanchez v. JMP Ventures, L.L.C., 2014 U.S. Dist. LEXIS 14980 (S.D.N.Y. 2014) (denying conditional certification because plaintiff failed to provide any detail as to his observations of and conversations with other proposed members of the putative collective, including the location or date of the conversations/observations); Ikikhueme v. CulinArt, Inc., 2013 U.S. Dist. LEXIS 77720 (S.D.N.Y. 2013) (denying conditional certification where plaintiff offered only his single declaration with "unsupported assertions" and no specific information about other employees); Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 355-56 (E.D.N.Y. 2008) (granting conditional certification only as to location where plaintiffs worked because allegations about conditions at other locations were based on hearsay and  unreliable statements); Levinson v. Primedia Inc., 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. 2003) (conditional certification denied because plaintiffs' evidence was limited to their own circumstances and there was insufficient evidence demonstrating that defendant was "employer" of other putative collective members).

14

And finally, just as is the case here, a motion for conditional certification will not be granted when it is based on nothing more than plaintiffs' self-serving affidavits, claiming that the proposed class is similarly situated, but which are contradicted by other evidence. See e.g. Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 2016 U.S. Dist. LEXIS 94220 (S.D.N.Y. 2016).

***Plaintiffs Have Not Demonstrated That The Proposed Class Members
Are Similarly Situated As It Relates To A Common Policy And Practice
Pertaining To Their Employment, Hours and Wages***

At bar, it is clear that Plaintiffs and potential class members have nothing in common. They have different employers, different responsibilities, work different hours, and adhere to different work policies. The only "evidence" that Plaintiffs supplied in support of their motion is their own self-serving declarations, which are contradicted by the proposed class members' declarations and thus fall short of meeting even their minimal burden. Plaintiffs allege the following, through their declarations, in an attempt to meet their burden of demonstrating that the proposed class members are similarly situated:

- Plaintiffs were paid a flat weekly salary;

- Plaintiffs worked more than 40 hours per week, but were not compensated for it; and

- That one proposed class member, "Robinson", allegedly worked "very long hours" and was paid a flat weekly schedule.

  o In fact, Mr. Bonilla's declaration does not even mention Robinson or the rest of the proposed class. He only discusses his *own* employment.

It is important to note the facts that must, at a minimum, be stated in Plaintiffs' declarations, but are blatantly absent:

- The names of the proposed class members (other than "Robinson");

15

- Any statement that any other proposed class members worked overtime and that they were not compensated for it;

- How they have this personal knowledge (for example, whether they spoke to them, and where and when the conversation took place);

- Who the (unidentified) proposed class members are employed by; and

- That the proposed class members have any desire to opt into this lawsuit.

These facts are unsurprisingly absent because Plaintiffs lack this information and could not have obtained it. Plaintiffs' declarations are precisely the type of bare-boned, *pro forma* statements that have been consistently held as insufficient to meet the necessary burden to obtain conditional certification. Taveras, supra, 324 F.R.D. at 45; Sanchez, supra, 2014 U.S. Dist. LEXIS 14980; Ikikhueme, 2013 U.S. Dist. LEXIS 77720; Laroque, supra, 557 F. Supp. 2d 346, 355-56; Levinson, supra, 2003 U.S. Dist. LEXIS 20010.

Plaintiffs can never meet their burden (no matter how minimal) of demonstrating that the proposed class members work overtime, were not compensated for it, and are interested in pursuing a lawsuit, as the annexed declarations conclusively prove otherwise. Indeed, the Defendants submit declarations from 14 of the 19 superintendents in the proposed class attesting to the fact that they do not work overtime, they are not owed any overtime wages and that they have no interest in pursuing any overtime claim. [Exhibits B - O]. As for the remaining superintendents, Plaintiffs fail to meet their burden, as stated above.

Most importantly, the one proposed class member that Plaintiffs have identified by first name only (Robinson) - - who they claim works overtime but was not compensated for it - - submits a declaration to correct Plaintiffs' obvious fabrications. Specifically, Mr. Morel attests that he never had any discussion with Plaintiffs regarding his schedule or wages, and that he never even shared a ride to the airport, as Plaintiffs claim. Instead, Mr. Morel states unambiguously that he

16

does not work overtime, he has never complained about his wages (to Plaintiffs or anyone), he is not owed any overtime and that he has no desire to opt into this lawsuit. [Exhibit B].

Not only have Plaintiffs failed to meet their burden based on their conclusory, self-serving, nonspecific declarations that are devoid of the most basic facts about the proposed class members, but the one specific fact they do provide is inadmissible hearsay and starkly contradicted by that proposed class member's own declaration. Taveras, supra, 324 F.R.D. at 45; Sanchez, supra, 2014 U.S. Dist. LEXIS 14980; Ikikhueme, 2013 U.S. Dist. LEXIS 77720; Laroque, supra, 557 F. Supp. 2d 346, 355-56; Levinson, supra, 2003 U.S. Dist. LEXIS 20010. As a result, Plaintiffs' motion must be denied.

Lastly, even assuming that the remaining 5 superintendents intended to opt into this lawsuit (which Plaintiffs have not demonstrated), the numerosity requirement for a class action would not be satisfied. Indeed, Plaintiffs acknowledge that "the members of the class must be so numerous that joinder of all members is impractical, if not impossible". [Exhibit A, ¶ 64]. But the inclusion of just 5 additional plaintiffs cannot be considered so significant that their joinder to this lawsuit would be considered impractical. Oscar v. BMW of N. Am., 274 F.R.D. 498, 2011 U.S. Dist. LEXIS 62601 (S.D.N.Y. 2011) citing Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, (2d. Cir. 1994) ("There is no magic minimum number that establishes numerosity for class actions, but numerosity is presumed at a level of 40 members.").

***Plaintiffs Have Not Demonstrated That The Proposed Class Members Are Similarly Situated As It Relates To Their Employers***

Not only must Plaintiffs demonstrate that the proposed class members are similarly situated as it relates to their schedule and wages, but Plaintiffs are required to supply evidence of a common policy to violate the law, "particularly in cases involving Defendants that are separate corporate entities". Urresta v. MBJ Cafeteria Corp., 2011 U.S. Dist. LEXIS 120126 (S.D.N.Y. 2011) *citing*

17

Castro v. Spice Place, Inc., 2009 U.S. Dist. LEXIS 7678 at *3 (S.D.N.Y. 2009) ("Some evidence of such a common policy to violate the law is particularly significant in this case given that Defendant restaurants are six distinct New York corporations and that defendants dispute plaintiffs' characterization of defendants as a joint employer under the FLSA.").

In Urresta, plaintiffs sought conditional certification for workers employed by four separate corporate entities: one a current defendant, and three non-party entities. In support of the motion, plaintiffs submitted declarations, asserting that they regularly worked more than 40 hours per week without being paid overtime and that there were approximately 20 other employees who worked alongside them at their job site who, like them, worked more than 40 hours per week without being paid overtime. Plaintiffs further alleged that they knew of other individuals at the other three locations including BMCC, John Jay and Hostos who were not paid overtime. Plaintiffs attempted to draw a relationship between the defendant and the three new entities, so as to argue that they were "joint employers" of the proposed class, and thus had a common policy of not paying overtime wages spanning across all of their locations.

The Southern District rejected those plaintiffs' bid for condition certification and held that plaintiffs did not sufficiently demonstrate that the three new entities sought to be joined were joint employers with the defendant so as to demonstrate that a common policy or plan existed among them. Specifically, the Court held:

> Notwithstanding Plaintiffs' contentions, a review of the evidence and applicable case law reveals that' the Court cannot authorize notice to current and former employees at John Jay, BMCC and Hostos, because Plaintiffs, even under the relatively lenient evidentiary standard, have not made the modest factual showing that they and the potential opt-in plaintiffs at these other colleges were victims of a common policy or plan. The Plaintiffs have averred that they have "talked to people who work or have worked at [BMCC]" and have "heard" about employees at John Jay and Hostos. This hearsay is insufficient to establish potential plaintiffs at all four colleges to be victims of a common policy or plan.

Id. at *15 (*internal citations omitted*).

Here, Plaintiffs seek to certify a class of employees with whom they have nothing in common whatsoever. They are not employed by 5 Tellers and have nothing to do with 5 Tellers, and there is no common policy and practice. [Victor Owen Dec., ¶ 8]. Instead, Plaintiffs' proposed class is comprised of 19 superintendents who were employed by 24 different entities that are not named as defendants in this lawsuit (who, if conditional certification were granted, would be necessary parties). [Victor Owen Dec., ¶ 8]. Nor do Plaintiffs allege that they are related in any way to the existing Defendants so as to consider them "joint employers." Without drawing a relationship between the non-party entities with the Defendants, Plaintiffs cannot possibly demonstrate that a common policy or plan not to pay overtime existed among completely unrelated companies. Moreover, and as further discussed below, certification of such a quixotic class would turn this suit into an unwieldy cluster involving scores of defendants, each with different factual defenses, in contravention of law and at the expense of judicial economy.

More than this though, Plaintiffs already acknowledged through the Complaint that the appropriate class members would be those who were employed by 5 Tellers in buildings managed by PMG (as they claim to be). Although this is sharply disputed, at least such employees would share the commonality and typicality elements of a class action. But now Plaintiffs do an about-face and completely change the proposed class to include superintendents who clearly do not share common questions and issues of fact and law; who did not sustain injuries and damages arising out of and caused by "defendants' common course of conduct in violation of the NYLL and FLSA"; and who are not adequately represented by the Plaintiffs in this action, who were admittedly employed by entities that are unrelated to the proposed class members' employers.

Accordingly, Plaintiffs have failed to establish that the proposed class members are similarly situated, in that they are employed by wholly separate entities, and have further failed to establish that a common policy or plan exists among these 24 distinct and unrelated entities. As a result, the motion must be denied.

***Granting This Motion Would Necessitate***
***The Addition of 24 Necessary Parties***

As a final point, assuming that this motion was granted, and the 19 superintendents in the proposed class opted into this lawsuit (although this is denied given their declarations), this would require the addition of the class members' employers. That being, 24 different and new entities (the owners of the various buildings).

The fact that so many additional defendants would need to be included in this lawsuit flies in the face of Plaintiffs' assertion that the Plaintiffs and the class members "share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy", in order to meet the commonality requirement. Indeed, there can be nothing efficient about prosecuting a case against 24 different entities, with 24 different wage policies.

The same issue arises when considering the typicality requirement. Plaintiffs must demonstrate that the Plaintiffs and all members of the class sustained injuries and damages arising out of and caused by defendants' <u>common course of conduct</u> in violation of state and federal law". But no such demonstration can be made when 24 additional, and unrelated entities must be included as defendants in this lawsuit.

Granting this motion necessitates the inclusion of two dozen additional defendants. The purpose of a class action is to streamline the prosecution of a litigation with common questions of fact and law, not to complicate it with nearly 30 different and unrelated defendants.

## **CONCLUSION**

For the foregoing reasons, PMG respectfully requests that this Court issue an order denying Plaintiffs' motion for conditional certification, in its entirety; and granting such other and further relief as it deems just, proper and equitable.

Dated: New York, New York
        December 22, 2020

BOYD RICHARDS PARKER & COLONNELLI, P.L.
*Attorneys for PMG*


By:_____
            Bryan J. Mazzola
            Jacqueline L. Aiello
        1500 Broadway, Suite 505
        New York, New York 10036
        (212) 400-0626

21