# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 20-CV-212 (MKB) (RER)

ANA LIZ AND WALY FERREIRA INDIVIDUALLY,
AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY
SITUATED,

Plaintiffs,

VERSUS

5 TELLERS ASSOCIATES, L.P., 5 TELLERS DEVELOPMENT FUND COMPANY, INC.,
PARKVIEW APARTMENTS, LLC, PROPERTY MANAGEMENT GROUP, INC., JOHN
VOLANDES, AND PETER VOLANDES, JOINTLY AND SEVERALLY,

Defendants.

## MEMORANDUM & ORDER

**April 1, 2021**

**RAMON E. REYES, JR., U.S.M.J.:**

Named Plaintiff Waly Ferreira ("Ferreira") and Opt-In Plaintiffs Mario Villanueva ("Villanueva"), Jonny Bonilla ("J. Bonilla"), and Francisco Antonio Liz ("F. Liz") (collectively, "the Superintendents") move for conditional certification of a collective and permission to send notice to potential opt-in members pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (Dkt. No. 39 ("Pls.' Mot.") ¶¶ 1, 3). They further request

that Defendant Property Management Group, Inc. ("PMG") be ordered to provide the contact information necessary to issue notice. (*Id.* ¶ 2). For the reasons set forth below, the Superintendents' motion is granted in part.

## BACKGROUND

### I.      Procedural History

On January 10, 2020, Ana Liz[1] and Ferreira (collectively, "Named Plaintiffs")

collective representative. (Dkt. No. 41 ("Pls.' Mem.") at 1 n.1).

---

[1] Named Plaintiff Ana Liz asserts her claims only in her individual capacity and not as a putative class or

commenced this action on behalf of themselves and other similarly situated persons. (Dkt. No. 1 ("Compl.") at 1). They allege that PMG, 5 Tellers Associates, L.P. ("5 Tellers L.P."), 5 Tellers Development Fund Company, Inc. ("5 Tellers HDFC"), Parkview Apartments, LLC ("Parkview"), John Volandes, and Peter Volandes violated the FLSA, 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.* (*Id.* ¶ 1). Ferreira filed his consent to be a party in a collective action on January 10, 2020. (Dkt. No. 3). Villanueva, J. Bonilla, and F. Liz then each consented to be a party in a collective action. (Dkt. Nos. 8–10).

5 Tellers L.P., 5 Tellers HDFC, Parkview, John Volandes, and Peter Volandes (collectively, "5 Tellers Defendants") filed an Answer on March 6, 2020. (Dkt. No. 21). They later amended their Answer to include a cross claim against PMG. (Dkt. No. 23). PMG answered the Complaint and cross claim on May 13, 2020. (Dkt. No. 30). It also asserted cross claims against the 5 Tellers Defendants. (*Id.*).

The Court referred this case to mediation on February 20, 2020. (Dkt. No. 22). Following mediation, the case remained unresolved. (Dkt. Entry Dated 8/12/2020; Dkt. No. 36). The Court then ordered the parties to complete discovery by June 1, 2021. (Order dated 8/26/2020).

The Superintendents filed their Motion to Certify FLSA Collective Action on November 9, 2020. (Dkt. Nos. 39–41). PMG opposed the motion. (*See* Dkt. Nos. 43–45).

While the motion has been pending, Jose Nicolas Blanco ("Blanco") and Ramon R. Ferreira filed their consent to join the collective. (Dkt. Nos. 47, 51).

## II.    Factual Allegations

The Named Plaintiffs allege that Defendants 5 Tellers L.P., 5 Tellers HDFC, and Parkview are part of a centrally managed real estate enterprise that owns, controls, and manages apartment buildings in New York City. (Compl. ¶ 4; Dkt. No. 40 ("Rapaport Decl.") ¶ 4). They further allege that John and Peter Volandes exercised ownership and control over the other 5 Tellers Defendants. (Compl. ¶ 5; *see also* Dkt. No. 44 ("Owen Decl.") ¶ 2). Named Plaintiffs, 5 Tellers Defendants, and PMG agree that PMG managed certain apartment buildings on behalf of the 5 Tellers Defendants. (Compl. ¶ 7; Rapaport Decl. ¶ 5; Dkt. No. 23 ¶ 151; *see* Owen Decl. ¶¶ 8–9). Named Plaintiffs and 5 Tellers Defendants also agree that PMG had control and decision-making authority over the terms and conditions of employment at those buildings, including wage policies and practices. (Compl. ¶¶ 7, 45; Dkt. No. 23 ¶¶ 152–53). PMG counters that it provided only "'back office' services, such as collecting rent from tenants and other ministerial activities." (Owen Decl. ¶ 3).

The buildings where the Superintendents worked were owned by different corporate entities,[2] but Ferreira, Villanueva, J. Bonilla, and Blanco aver that PMG enforced the same wage and hour practices at the different buildings it managed. (Ferreira Decl. ¶ 11; Villanueva Decl. ¶ 4; J. Bonilla Decl. ¶ 12;

---

[2] Ferreira, J. Bonilla, and Villanueva worked at buildings owned by Parkview (1660 Crotona Park East, 1680 Crotona Park East, and 819–823 East 173rd Street in the Bronx, respectively); F. Liz worked at 300–306 East 162nd, a building in the Bronx owned by 5 Tellers L.P.; Blanco worked at three buildings in the Bronx each owned by a different entity. (*See* Dkt.

No. 40-8 ("Ferreira Decl.") ¶ 2; Dkt. No. 40-9 ("Villanueva Decl.") ¶ 2; Dkt. No. 40-10 ("J. Bonilla Decl.") ¶ 2; Dkt. No. 40-11 ("F. Liz. Decl.") ¶ 2; Dkt. No. 40 ("Blanco Decl.") ¶ 1; Owen Decl. ¶¶ 8–9; Dkt. No. 40-3).

Blanco Decl. ¶ 17). They allege a centralized management structure of PMG. (Pls.' Mem. at 4; Dkt. No. 49 ("Pls.' Reply") at 5). The Superintendents and Blanco agree that PMG oversaw payroll and other employment-related issues. (Ferreira Decl. ¶ 13; Villanueva Decl. ¶¶ 8, 10; J. Bonilla Decl. ¶¶ 7–8; F. Liz Decl. ¶ 9; Blanco Decl. ¶ 17). Paychecks and work orders were issued from the PMG office located at 3151 Albany Crescent, Bronx, New York ("the Albany Crescent Office"). (Ferreira Decl. ¶ 14; Villanueva Decl. ¶¶ 3, 5, 11–12; J. Bonilla Decl. ¶¶ 10, 13; F. Liz. ¶ 5; Blanco Decl. ¶ 17).

On average, the Superintendents and Blanco all worked substantially more than forty hours per week. (Ferreira Decl. ¶ 12 (65 hours); Villanueva Decl. ¶ 15 (55.5 hours); J. Bonilla Decl. ¶ 9 (74 hours); F. Liz. Decl. ¶ 9; Blanco Decl. ¶¶ 9, 12 (52 hours)). And they were all paid a fixed weekly salary. (Ferreira Decl. ¶¶ 11–12, 23 ($560); Villanueva Decl. ¶¶ 4, 15 ($560); J. Bonilla Decl. ¶ 5 ($560); F. Liz. Dec. ¶ 10 ($300); Blanco Decl. ¶ 14 ($360 and later $500). They were not paid overtime compensation. (Ferreira Decl. ¶ 12; Villanueva Decl. ¶¶ 4, 15; J. Bonilla Decl. ¶ 9; F. Liz Decl. ¶ 10; Blanco Decl. ¶ 14). Villanueva and J. Bonilla also assert wage statement violations.[3] (Villanueva Decl. ¶ 6; Bonilla Decl. ¶ 11).

The Superintendents identify three PMG managers who worked in the Albany Crescent Office—Frank Vargas ("Vargas"), Pan Xin ("Xin"), and Ramon Bonilla. These individuals were involved to some degree in supervising the Superintendents' work. (Ferreira Decl. ¶¶ 3–4, 17–18; Villanueva Decl. ¶¶ 3, 8–9; J. Bonilla Decl. ¶¶ 4–6; F. Liz. Decl. ¶ 8). Vargas and Xin served as designated agents and/or managers for several PMG-managed buildings in the

Bronx and Manhattan. (Dkt. No. 40-3).

Another supervisor was named Orlando Carpio ("Carpio"). (Ferreira Decl. ¶¶ 15, 17, 19; Villanueva Decl. ¶ 8; J. Bonilla Decl. ¶¶ 7, 11). PMG states that Carpio was an employee of the 5 Tellers Defendants who was merely provided with an "on-site" office. (Owen Decl. ¶¶ 4–5). The Superintendents and Blanco also received work orders from PMG secretary "Denise." (Ferreira Decl. ¶ 16; Villanueva Decl. ¶ 8; J. Bonilla Decl. ¶ 8; F. Liz. Dec. ¶ 9; Blanco Decl. ¶ 17).

Around late 2017, Ferreira, Villanueva, J. Bonilla, and R. Liz approached Xin, Carpio, and a Spanish-speaking PMG office worker to complain about their wages. (Ferreira Decl. ¶ 20; Villanueva Decl. ¶ 17). In approximately early 2019, Blanco complained to PMG president Victor Owen ("Owen") about his wages. (Blanco Decl. ¶ 13).

## LEGAL STANDARD

The FLSA permits employees to assert claims on behalf of themselves and other similarly situated employees. 29 U.S.C. § 216(b). In the Second Circuit, certification of a FLSA collective action is a two-step process. *Finnigan v. Metro. Transp. Auth.*, No. 19-CV-00516 (PKC) (RER), 2020 WL 1493597, at *2 (E.D.N.Y. Mar. 26, 2020) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010)). Ferreira's current motion only concerns "[t]he first step, called conditional certification." *See Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012). If conditional certification is granted, the putative collective members are sent notices and given the opportunity to opt-in to the collective action. *Id.* After discovery, defendants can move to decertify the class, and the court evaluates the similarities

---

[3] J. Bonilla asserts a wage notice violation as well.

(J. Bonilla Decl. ¶ 5).

amongst the collective with increased scrutiny. *See id.* at 320–21.

Conditional certification requires plaintiffs to demonstrate by "a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Finnigan*, 2020 WL 1493597, at *2 (quoting *Myers*, 624 F.3d at 555). In other words, the plaintiff must show that "there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions." *Myers*, 624 F.3d at 555 (citation omitted).

> Although the Second Circuit has yet to prescribe a particular method for determining whether members of a putative class are similarly situated, district courts in this circuit look to the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class."

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (quoting *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG) (RER), 2007 WL 2994278 at *3 (E.D.N.Y. Oct. 11, 2007) (collecting cases)).

In determining whether plaintiffs have met their burden, courts "look[] to the pleadings and submitted affidavits" and do not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Yu Zhang v. Sabrina USA Inc.*, No. 18 Civ. 12332 (AJN) (OTW), 2019 WL 6724351, at *2 (S.D.N.Y. Dec. 20, 2019) (citations omitted); *see also Urresta v. MBJ Cafeteria Corp.*, No. 10 Civ. 8277 (RWS), 2011 U.S.

Dist. LEXIS 120126, at *4 (S.D.N.Y. Oct. 17, 2011) (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). Allegations in the complaint and other conclusory statements that similarly situated employees exist are insufficient. *Prizmic v. Armour, Inc.*, No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (collecting cases). "A plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated . . . ." *Id.*; *see also Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005). "[C]ourts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA." *Colon v. Major Perry St. Corp.*, No. 12 Civ. 3788 (JPO), 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013).

## DISCUSSION

### I. The Superintendents' Allegations are Sufficient as to PMG-Managed Buildings in the Bronx

The Superintendents' submissions satisfy their burden of a modest factual showing that they are similarly situated to other superintendents at PMG-managed buildings in the Bronx because five declarations before the Court corroborate the pleadings and give rise to an inference that the same wage and hour policy was enforced across PMG-managed buildings in those locations.

### A. The Superintendents Established that there are Similarly Situated Employees

The Superintendents' and Blanco's declarations specify that they worked the

4

same job during a similar time period,[4] were paid in the same manner, and answered to the same individuals who operated out of one office. These declarations are sufficient to demonstrate a factual nexus as to the wage and hour violations experienced by superintendents who worked at PMG-managed buildings in the Bronx. *See Colon*, 2013 WL 3328223, at *7 (quoting *Jacob v. Duane Reade, Inc*., No. 11 Civ. 160, 2012 WL 260230, at *8 (S.D.N.Y. Jan. 27, 2012) ("[T]he question 'before the Court is not whether Plaintiffs and other [superintendents] were identical in all respects, but 'rather whether they were subjected to a common policy to deprive them of overtime pay.'"). The only evidence the Superintendents provide about PMG-managed buildings in Manhattan is that Vargas and/or Xin are the designated agent and/or manager of some of them; none of the Superintendents purport to have any information as to whether employees at the Manhattan properties are subject to the same alleged wage and hour violations.

Both Ferreira and Villanueva also reference a conversation that they had with "Robinson," the superintendent of a PMG-managed building located on Stratford Avenue in the Bronx during which Robinson shared that he also worked long hours for a flat weekly pay. (Ferreira Decl. ¶ 16; Villanueva Decl. ¶¶ 10, 23). PMG submitted a declaration from Robinson in which he denies ever discussing his wages with Ferreira or Villanueva and states that he has never been denied overtime compensation because he works fewer than forty hours per week. (Dkt. No. 43-2 ¶¶ 2, 11). The Court will not weigh the credibility of the

competing declarations at this time. *See Morris v. Lettire Constr. Corp.*, 896 F. Supp. 2d 265, 271–272 (S.D.N.Y. 2012) (declining to consider the declaration of an individual denying a statement that plaintiff alleged he made). PMG further argues that the hearsay statements regarding what Robinson may have said during a conversation with Ferreira and Villanueva are inadmissible. However, Courts in this District do not strike hearsay statements at this stage of litigation. *Lujan v. Cabana Mgmt.*, No. 10-CV-755 (ILG), 2011 WL 317984, at *6 (E.D.N.Y. Feb. 1, 2011) (declining to strike a hearsay statement "given the 'modest factual showing' required at the notice stage." (quoting *Laroque*, 557 F. Supp. 2d at 352)). Even if the Court does not consider that Robinson may have experienced the same alleged FLSA violations, Ferreira has still provided sufficient facts to merit conditional certification of a collective action because the Superintendents, who worked at different buildings managed by PMG, experienced the same wage and hour violations. *See Colon*, 2013 WL 3328223, at *6 (finding plaintiff's allegations together with declarations from two other superintendents "more than sufficient" to establish a common policy enforced at over 100 apartments buildings owned by several corporate entities owned by the same individual).

PMG argues that the Superintendents have not demonstrated that the proposed opt-in plaintiffs are similarly situated and subject to a common policy as to their employment, hours, and wages. (Dkt. No. 45 ("Opp'n") at 15). Specifically, PMG asserts that the Superintendents did not provide the names of proposed class members, statements that

---

[4] The approximate dates of employment for each Superintendent at a PMG-managed building are as follows: Ferreira, July 2012 through November 2019; Villanueva, June 2006 through February 13, 2020; J. Bonilla, 2009 through on or about November 1, 2019; F. Liz, May 2003 through November 1, 2019;

Blanco, 2006 until the present. (Ferreira Decl. ¶ 2; Villanueva Decl. ¶ 2; J. Bonilla Decl. ¶ 2; F. Liz Decl. ¶ 2; Blanco Decl. ¶ 1). PMG ceased serving the 5 Tellers Defendants on or about November 1, 2019. (Pls.' Mem. at 5).

other proposed class members were not compensated for overtime, how they have personal knowledge of the work conditions for proposed class members, who employs the proposed class members, and whether the proposed class members desire to opt into this lawsuit. (Opp'n at 15–16). This argument mischaracterizes the Superintendents' burden.[5] This Court has previously noted that "[w]hile there are a few cases which may appear to stand for [the proposition that a declaration supporting conditional certification needs to be exquisitely detailed as to time, place, occurrence, speaker, etc.],

they are in the minority." *Millin v. Brooklyn Born Chocolate, LLC*, No. 19-CV-3346 (ENV) (RER), 2020 WL 2198125, at *2 (E.D.N.Y. May 6, 2020) (collecting cases) (finding as sufficient named plaintiff's pleadings together with time records and pay stubs corroborating his assertions); *cf. Contrera v. Langer*, 278 F. Supp. 3d 702, 716 (S.D.N.Y. 2017).

Lastly, as PMG emphasizes, the collective includes a small number of individuals. (Opp'n at 16–17). PMG submits declarations from fourteen superintendents at

[5] Courts tend to require more details, such as those identified by PMG, when plaintiffs seek to certify a nationwide or otherwise vast collective or to include in the collective individuals with different job titles or who work at disparate locations, yet fail to provide any evidence suggesting that those other employees are subject to the same policy and practices. That is not the case here. *See Garriga v. Blonder Builders Inc.*, No. 17-CV-497 (JMA) (AKT), 2018 U.S. Dist. LEXIS 171887, at *15 (E.D.N.Y. Sep. 28, 2018) ("[W]hile Plaintiffs' declarations are sufficient to show that they and their fellow carpenters were likely subject to a common policy or plan that violated the law and were otherwise similarly situated, their assertions as to other non-exempt employees are sparse and insufficient to expand the collective to include "all non-exempt employees."); *Sanchez v. JMP Ventures, LLC.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying motion for conditional certification where plaintiff submitted only his own affidavit and failed to include any detail about conversations he had with potential opt-in plaintiffs); *Taveras v. D&J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39 (S.D.N.Y. 2013) (granting conditional certification of superintendents working within the same two buildings but excluding those at other buildings, because plaintiffs did not identify any individuals working at other locations, did not provide specifics of conversation with other employees, did not explain how they could have observed the work schedules of those at other locations, and did not offer proof that their manager also managed employees at other locations); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355–56 (E.D.N.Y. 2008) (certifying a collective for only one location where including other locations could lead to a collective of hundreds of employees, individuals at other locations worked under different managers, and the only supporting

evidence of a common policy was hearsay statements that had been called in to question.); *Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293 (JMF), 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (denying certification of a collective of sous chefs at many different locations where plaintiff submitted only his own affidavit and made no allegations that other sous chefs were subject to the alleged FLSA violations.); *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 478 (S.D.N.Y. 2016) (applying "a modest 'plus' standard" and denying conditional certification where plaintiffs' declarations contradicted their own deposition testimony, eleven of the twelve opt-in plaintiffs worked for the same vendor and where the proposed nationwide collective encompassed "approximately 7,500 workers associated with forty different . . . vendors at approximately seventy different worksites.").

PMG also cites to *Levinson v. Primedia Inc.*, No. 02 Civ. 2222 (CBM), 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003). In *Levinson*, the court denied certification for a class of tour guides employed by related entities. While the named plaintiffs submitted their own contracts and descriptions of their pay arrangements, the court was unpersuaded that other tour guides, referenced only in the abstract, were subject to the same policy. The Superintendents, however, have also alleged a centralized management structure of PMG, (Pls.' Mem. at 4; Pls.' Reply at 5), provided a building list showing that many of the same designated agents or managers were assigned to several different PMG-managed buildings, (Dkt. No. 40-3), and submitted affidavits of individuals other than the named plaintiff and who work at different locations, (Dkt. Nos. 40-9 through 40-11, 48).

other PMG-managed buildings in an attempt to demonstrate that the majority of potential opt-in plaintiffs are not subject to the wage and hours policy that the Superintendents describe.[6] (*Id.* at 16; Dkt. Nos. 43-2 through 43-15). The Court declines to consider those declarations at this *conditional* certification stage. *See Morris*, 896 F. Supp. 2d at 271–272 (declining to consider declarations of employees who claimed that they did not work overtime and were compensated if they did).

PMG then argues that even if "the remaining 5 superintendents [who did not submit affidavits through PMG] intended to opt into this lawsuit . . . the numerosity requirement for a class action would not be satisfied." (Opp'n at 17). It is without question that the Rule 23 requirements, including numerosity, are not applicable to certification of a FLSA collective action. *See, e.g.*, *Jenkins*, 853 F. Supp. 2d at 320; *Young*, 229 F.R.D. at 54 (quoting *Foster v. Food Emporium*, No. 99 Civ. 3860 (CM), 2000 WL 1737858, at *1 (S.D.N.Y. April 26, 2000)). Courts in this Circuit agree that "[e]ven if the group of eligible plaintiffs is small, they all 'have a right to notice of these claims and an opportunity to join this action.'" *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (quoting *Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004)).

B. The Superintendents Support an Inference of a Uniform Policy under Common Ownership or Management

At the conditional certification stage, the Court need only find that the Superintendents' factual showing adequately "support[s] an inference that a uniform policy or practice exists" under "common ownership or management." *See Contrera*, 278 F. Supp. 3d at 714 (quoting *Cruz v. Ham N Eggery Inc.*, 2016 WL 4186967, at *3 (E.D.N.Y. Aug. 8, 2016)) (noting that whether a particular defendant is a joint employer under FLSA is a fact specific inquiry not to be resolved at this stage); *cf. Urresta*, 2011 U.S. Dist. LEXIS 120126, at *19 (finding that plaintiffs did not provide "a factual demonstration of any common control or other element of joint-employer status.").

PMG argues that "Plaintiffs' proposed class is comprised of 19 superintendents who were employed by 24 different entities . . . Nor do Plaintiffs allege that they are related in any way to the existing Defendants." (Opp'n at 19). But PMG fails to appreciate the relevance of the undisputed fact that the twenty-four entities all had PMG manage their residential apartment buildings. (*See* Opp'n at 8; Owen Decl. ¶¶ 8–9). The Superintendents' factual evidence supports an inference that superintendents in the Bronx were subject to a uniform wage and hour policy under PMG management.

The Superintendents and Blanco assert that PMG issued work orders, paychecks, and

---

[6] Blanco has introduced doubt as to the credibility of these statements. (*See* Banco Decl. ¶¶ 3–11). He is one of the superintendents whose declaration PGM submits with its opposition. (Dkt. No. 43-11). Blanco subsequently submitted a declaration along with the Superintendents' reply that details the conditions under which he provided that statement (including that "[t]he PMG manager whispered how I should answer the questions" and that "[he] was terrified of losing

[his] job and residence") and states that his first declaration did not accurately describe his actual hours. (Blanco Decl. ¶¶ 6–9). Blanco also submits a voice message he received to dissuade him from speaking to any lawyers about his work with PMG. (Dkt. No. 48-1). According to Blanco, PMG manager and agent Vargas left that message. (Blanco Decl. ¶ 3).

other employment-related memos; it handled vacation time and other employment-related issues.[7] (Ferreira Decl. ¶¶ 13–14, 17; Villanueva Decl. ¶¶ 3, 5, 8, 10–12; J. Bonilla Decl. ¶¶ 7–8, 10–11, 13; F. Liz Decl. ¶¶ 5, 9; Blanco Decl. ¶ 17). When Ferreira had a concern about his wages, he, together with superintendents of other buildings, owned by separate entities,[8] spoke with PMG manager Xin with the understanding that his decision on wages was final. Similarly, Blanco spoke to PMG president Owen about a wage-related concern, understanding his decision on wages to be final. (Blanco Decl. ¶ 13; *see* Owen Decl. ¶ 1).

The Superintendents' counsel's staff reviewed public records to determine the number and locations of buildings managed by PMG. (Rapaport Aff. ¶¶ 7–8). The records indicate that for each building other than those for which one of the 5 Tellers Defendants held title, including the Manhattan buildings, the designated agent and/or manager is listed at the Albany Crescent Office. (Dkt. No. 40-3). Vargas and/or Xin are the designated agent and/or manager of all of the buildings that PMG managed in the Bronx except for approximately three. (Dkt. No. 40-3).

The Court can reasonably infer from the affidavits of five different superintendents at separate buildings in the Bronx, each managed by PMG that there is a common policy of wage and hour violations at PMG-managed buildings in the Bronx. *See*

*Contrera*, 278 F. Supp. 3d at 716 ("Even 'a single affidavit providing some basis for an inference that a company-wide policy exists could be sufficient to grant conditional certification.'" (quoting *Fernandez v. Sharp Mgmt. Corp.*, No. 16 Civ. 551 (JGK) (SN), 2016 WL 5940918, at *3 (S.D.N.Y. Oct. 13, 2016) (collecting cases))); *Sipas v. Sammy's Fishbox, Inc.*, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) ("All the Plaintiffs were required to wear the same uniforms, attend the same semi-annual meetings to discuss problems with parking operations, and answer to the same supervisors" and alleged the same wage violations.); *Taveras*, 324 F.R.D. at 46 ("[individual defendant] was involved in management of employees employed at [two locations], suggesting common management and centralized control of labor relations" but finding that including unnamed employees of unnamed "related" entities was too broad). The Court cannot make the same inference as to PMG-managed buildings in Manhattan or Brooklyn. *See Monger v. Cactus Salon & Spa's LLC*, No. 08-CV-1817 (FB) (WDW), 2009 WL 1916386, at *2 (E.D.N.Y. July 6, 2009) ("[Plaintiff's] offer no basis for this belief [that other locations' employees are similarly situated]; they name no individuals at other salons who are similarly situated; and they provide no documentary evidence that policies are the same at different Cactus Salon locations."); *Greene v. C.B. Holding Corp.*, 2010 WL 3516566, at *5 (granting conditional certification based on eight affidavits supporting that alleged wage and

---

[7] The Court acknowledges the dispute regarding whether PMG exercised control over employment conditions or merely performed "back office" tasks. (*Compare* Compl. ¶¶ 7, 45, *and* Dkt. No. 23 ¶¶ 152–53, *with* Owen Decl. ¶ 3). The Court will not consider the substance of those arguments at this time; however, after discovery, PMG may move to decertify the collective, and the Court will evaluate whether the opt-in plaintiffs are in fact similarly situated. *See, e.g., Jenkins*, 853 F. Supp. 2d. at 320–21; *Millin*, 2020 WL

2198125, at *1.

[8] Based on the records collected by the Superintendents' counsel, Ferreira, Villanueva, and J. Bonilla all worked in buildings to which Parkview held title; 5 Tellers L.P. held title to the building in which F. Liz worked; and Blanco worked for three buildings of which title for each was held by a different corporate entity. (Dkt. No. 40-3).

hour violations were experienced at five New York locations, one New Jersey location, and two Pennsylvania locations).

Lastly, without citing any authority, PMG argues that granting the Superintendents' motion would necessitate the addition of twenty-four necessary parties under Rule 23. (Opp'n at 20–21). It is no barrier to conditional certification that not all potentially affiliated entities are named as defendants. *See Lujan*, 2011 WL 317984, at *1–2 (granting conditional certification after noting that not all related entities were named as defendants).

## II.      Content of the Proposed Notice

Under the FLSA, district courts have the authority to order that notice be given to potential members of a collective. *E.g., Colon*, 2013 WL 3328223, at *7. "[T]he dissemination of notice in a FLSA collective action is a case management tool that courts may employ in 'appropriate cases,' including where notice will facilitate swift and economic justice." *Taveras*, 324 F.R.D. at 41 (citing *Myers*, 624 F.3d at 555).

In their Complaint, Named Plaintiffs anticipated that the FLSA Collective would refer to "all persons who are, or have been, employed as superintendents and maintenance workers at the 5 Tellers Buildings from three (3) years prior to this action's filing through the date of the final disposition who elect to opt-in to this action." (Compl. ¶ 54). The Superintendents now requests that the Collective include

> current and former superintendents of all residential apartment buildings owned and/or managed by [PMG] - - who, while performing work for Defendants at any time between January 10, 2017 and the present, did not receive pay at least at the

minimum wage rate for all hours worked and/or overtime compensation for all hours over forty that they worked in a workweek.

(Pls.' Mot.).

The FLSA affords a two-year statute of limitations to bring a cause of action unless the violation was willful, in which case the limitations period is extended to three years. 29 U.S.C. § 255(a). The Superintendents allege that the FLSA violations were willful. (Compl. ¶¶ 56, 65). Accordingly, their proposed collective action period is appropriate. *See Garriga*, 2018 U.S. Dist. LEXIS 171887, at *18–19.

PMG argues that the Superintendents' revised definition for the collective should be construed as an acknowledgment that the appropriate collective is only those superintendents employed by the 5 Tellers Defendants in buildings managed by PMG. (Opp'n at 5). However, PMG provides no legal support for its argument that they should not be permitted to seek conditional certification of the amended proposed collective, and the Court finds none. The Superintendents appropriately modified part of the anticipated opt-in collective after limited discovery. For example, maintenance workers were removed from the proposed collective because Named Plaintiff Ana Liz, a porter, no longer seeks to represent a collective. The Superintendents are directed to further modify the collective in accordance with this order; namely, to include only superintendents who worked at PMG-managed buildings in the Bronx.

## III.     Form of the Proposed Notice and Reminder Notice

The Superintendents request authorization to send notice and reminder notice by mail, email, and text message. (Dkt.

Nos. 40-4 through 40-7). This request is granted. *See Millin*, 2020 WL 2198125, at *3 ("There is no credible reason why notice should not be provided by email or text message, especially given the broad remedial purpose of the FLSA."); *see also Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017) ("many courts in this district have permitted sending a reminder notice").

The Superintendents also request to distribute the notice in Spanish as well as English. (Pls.' Mem. at 20). This request is granted. *See Lijun Geng v. Shu Han Ju Rest. II Corp.,* No. 18 Civ. 12220 (PAE) (RWL), 2019 WL 4493429, at *19 (S.D.N.Y. Sept. 9, 2019) ("[T]ranslation of court-authorized notice is commonly granted 'to increase the effectiveness of the notice in reaching potential opt-in plaintiffs.'" (quoting *Liping Dai v. Lychee House, Inc.*, 17-CV-6197 (DF), 2018 WL 4360772, at *12 (E.D.N.Y. Aug. 29, 2018))).

## IV.     Tolling FLSA Statute of Limitations

The Superintendents request that the Court order that "the FLSA statute of limitations be tolled from the date of filing of this motion until such time as the Court resolves [it]." (Pls.' Mem. at 20). PMG does not oppose this request.

While the limitations period for each potential plaintiff continues to run until they elect to opt-in to the action, 29 U.S.C. § 256(b), some plaintiffs may be eligible for equitable tolling. *See*, e.g., *Millin*, 2020 WL 2198125, at *4 (citing *Kemper v. Westbury Operating Corp.*, No. 12-CV-0895 (ADS) (ETB), 2012 WL 4976122, at *3 (E.D.N.Y. Oct. 17, 2012). It is therefore appropriate that notices of the collective action be sent to prospective plaintiffs who worked for defendants from six years prior to the filing

of the motion for collective action (November 9, 2020), rather than the date upon which notice is mailed. *Id.*

## V.     Requested Contact Information

The Superintendents seek an order from this Court directing PMG "to produce a computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known email addresses, work locations, dates of employment, and primary languages spoken of all potential collective action members who worked at buildings owned or managed by PMG at any point from November 9, 2014 to the present." (Pls.' Mot. ¶ 2). The Court assumes that this request seeks to include superintendents who may have claims under the NYLL.

In addition to the FLSA claims, the Court can exercise supplemental jurisdiction over the NYLL claims arising out of the policies complained of here. *See* 28 U.S.C. § 1367. The NYLL statute of limitations is six years from the date that the employee filed a complaint. N.Y. Lab. Law §§ 198(3), 663(3). The NYLL does not have a provision equivalent to § 216(b) of the FLSA. *See Guzman*, 2007 WL 2994278, at *5. Courts in this Circuit, including this Court, have therefore found it appropriate that notices of the collective action be sent to prospective plaintiffs with claims now or dating back six years. *See Anjum v. J.C. Penney Co.*, No. 13 CV 460 (RJD) (RER), 2015 WL 3603973, at *12 (E.D.N.Y. June 5, 2015); *Millin*, 2020 WL 2198125, at *4; *Garriga*, 2018 U.S. Dist. LEXIS 171887, at *19–20; *Guzman*, 2007 WL 2994278, at *6 (collecting cases).

Notice shall be sent to superintendents who worked for PMG-managed buildings in the Bronx during the six years prior to the filing of the motion for collective action. Accordingly, PMG is directed to produce the

requested contact information.

## **CONCLUSION**

For the reasons set forth above, the Superintendents' motion for conditional certification of a collective action is GRANTED in part. A collective action of superintendents who worked or work at PMG-managed buildings in the Bronx from January 10, 2017 to present is conditionally certified and the proposed notice is approved with modification. The Superintendents' request for equitable tolling is granted in part. Within fourteen days of this Order, Defendants are directed to provide Plaintiffs' counsel with the requested contact information for potential collective action members for the purpose of issuing the notice.

SO ORDERED

**/s/ Ramon E. Reyes, Jr.**
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: April 1, 2021
        Brooklyn, NY