# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between Waly Ferreira, Ana Liz, Francisco Liz, Johnny Bonilla, Mario Villanueva, Nicolas Blanco ("Blanco"), Jose Hernandez and Ramon Ferreira, on the one hand (hereinafter referred to collectively as "Plaintiffs") and 5 Tellers Associates, L.P., 5 Tellers Housing Development Fund Company, Inc., Parkview Apartments, LLC, John Volandes, and Peter Volandes (hereinafter referred to collectively as the "5 Tellers Defendants"), and Property Management Group, Inc. (hereinafter referred to as "PMG"; with the 5 Tellers Defendants, the "Defendants"), on the other hand. Together, Plaintiffs and Defendants are referred to herein as the "Parties."

**WHEREAS,** Plaintiffs were employed at various apartment buildings owned and/or managed by one or more of the Defendants;

**WHEREAS,** Waly Ferreira and Ana Liz filed a Complaint in the United States District Court, Eastern District of New York (the "Court"), Case No.: 20-cv-0212, on behalf of themselves and opt-in Plaintiffs, claiming wage and hour violations against the Defendants, including for unpaid wages and overtime under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"); failure to furnish wage statements, notices and recordkeeping requirements (the "Action");

**WHEREAS,** several unresolved disputes exist among the Parties, including, but not limited to, whether and to what extent Plaintiffs worked overtime, whether and to what extent they are entitled to any additional compensation alleged to be owed to them; and whether and to what extent Plaintiffs are owed any damages, including liquidated damages, and attorneys' fees, all of which Defendants expressly deny;

**WHEREAS,** the Parties attended a mediation on May 31, 2022, and as of June 2, 2022 all the Parties agreed in principle to the material terms of settlement, and the Parties desire to fully and finally resolve the Action;

**WHEREAS,** the Parties acknowledge that they each had an opportunity to consult with counsel of their choosing and each has provided substantial input into the following terms and agreements and represent that same are fair, just and equitable;

**NOW, THEREFORE,** Plaintiffs and Defendants, in consideration of the mutual promises and covenants set forth herein, the receipt and sufficiency of which is hereby acknowledged, agree as follows:

1.      **No Admission of Liability.** This Agreement shall not in any way be construed as an admission by any of the Defendants, of any violations of any of Plaintiffs' rights and is being entered solely to avoid the expense and uncertainty of a trial. The Defendants expressly deny violating any right of the Plaintiffs based on any federal, state or local law pertaining to their employment or claims for unpaid wages, or on any other basis, and expressly deny any liability to Plaintiffs. Neither this Agreement, nor its terms, will be admissible in any action or proceeding as evidence of any fact or conclusion or for any purpose, except only that this Agreement may be introduced in any action or proceeding arising from an alleged breach of the terms of this Agreement as set forth herein.

2.    **Consideration.** In consideration for Plaintiffs entering into this Agreement and providing the releases, as applicable, set forth below, and provided this Agreement is approved by the Court, the Defendants agree to pay Plaintiffs and their attorneys the total sum of Four Hundred Fifty One Thousand, Five Hundred Dollars ($451,500.00; the "Settlement Payment").

(a) $155,719.34 of the Settlement Payment will be allocated to attorneys' fees ($145,683.01) and costs ($10,036.33). The remaining $295,780.66 of the Settlement Payment will be distributed to Plaintiffs, as follows, based on an allocation determined solely between Plaintiffs and their counsel:

i. A check made payable to RAPAPORT LAW FIRM, PLLC, in the net sum of $81,042.84, which shall be reportable on an IRS Form 1099 (Box 3);

ii. A check made payable to MILLER LAW, PLLC, in the net sum of $74,676.50, which shall be reportable on an IRS Form 1099 (Box 3);

iii. A check made payable to FRANCISCO LIZ in the amount of $15,621.69, from which estimated deductions will be made for taxes and other withholdings, and for which a W-2 tax form shall be issued to him in the year the payment is made;

iv. A check made payable to FRANCISCO LIZ in the amount of $15,621.68, from which no withholding, deduction or setoff shall be made, and for which an IRS form 1099 shall be provided to him;

v. A check made payable to WALY FERRIERA in the amount of $35,900.65, from which estimated deductions will be made for taxes and other withholdings, and for which a W-2 tax form shall be issued to him in the year the payment is made;

vi. A check made payable to WALY FERRIERA in the amount of $35,900.65, from which no withholding, deduction or setoff shall be made, and for which an IRS form 1099 shall be provided to him;

vii. A check made payable to JOHNNY BONILLA in the amount of $26,357.61, from which estimated deductions will be made for taxes and other withholdings, and for which a W-2 tax form shall be issued to him in the year the payment is made;

viii. A check made payable to JOHNNY BONILLA in the amount of $26,357.60, from which no withholding, deduction or setoff shall be made, and for which an IRS form 1099 shall be provided to him;

ix. A check made payable to MARIO VILLANUEVA in the amount of $28,743.37, from which estimated deductions will be made for taxes and other withholdings, and for which a W-2 tax form shall be issued to him in the year the payment is made;

x.     A check made payable to MARIO VILLANUEVA in the amount of $28,743.36, from which no withholding, deduction or setoff shall be made, and for which an IRS form 1099 shall be provided to him;

xi.     A check made payable to ANA LIZ in the amount of $7,852.30, from which estimated deductions will be made for taxes and other withholdings, and for which a W-2 tax form shall be issued to her in the year the payment is made;

xii.     A check made payable to ANA LIZ in the amount of $7,852.30, from which no withholding, deduction or setoff shall be made, and for which an IRS form 1099 shall be provided to her;

xiii.     A check made payable to NICHOLAS BLANCO in the amount of $18,871.69, from which estimated deductions will be made for taxes and other withholdings, and for which a W-2 tax form shall be issued to him in the year the payment is made;

xiv.     A check made payable to NICHOLAS BLANCO in the amount of $18,871.68, from which no withholding, deduction or setoff shall be made, and for which an IRS form 1099 shall be provided to him;

xv.     A check made payable to JOSE HERNANDEZ in the amount of $9,657.28, from which estimated deductions will be made for taxes and other withholdings, and for which a W-2 tax form shall be issued to him in the year the payment is made;

xvi.     A check made payable to JOSE HERNANDEZ in the amount of $9,657.28, from which no withholding, deduction or setoff shall be made, and for which an IRS form 1099 shall be provided to him;

xvii.     A check made payable to RAMON FERREIRA in the amount of $4,885.76, from which estimated deductions will be made for taxes and other withholdings, and for which a W-2 tax form shall be issued to him in the year the payment is made; and

xviii.     A check made payable to RAMON FERRIERA in the amount of $4,885.76, from which no withholding, deduction or setoff shall be made, and for which an IRS form 1099 shall be provided to him.

(b) Simultaneously with the execution of this Agreement, each Plaintiff shall execute and provide to the Defendants Forms W4 and W9. In the event that a Plaintiff has not provided one of the foregoing forms, only the portion of his or her share of the Settlement Payment that is directly affected by the missing form shall be placed in escrow with Defendants' respective counsel pending receipt of the missing form, and the aforesaid circumstances shall not delay, impair or otherwise affect Defendants' payment obligations to pay any other Plaintiff his or her share(s) of the Settlement Payment; and/or Defendants' obligations to pay the agreed-upon attorneys' fees; and/or any other sum not directly related to the missing tax form.

(c) The Parties agree that any plaintiff may insert "applied for" in box "b" of Step 1 of his W-4 Form. However, for each plaintiff that inserts "applied for" in box "b" of Step 1 of his W-4 Form, their settlement payments, as outlined above, shall be subject to backup withholding at a flat rate of 24%.

(d) The Settlement Payment shall be apportioned among Defendants for payment to Plaintiffs as follows: (a) the "5 Tellers Defendants" shall contribute $235,000.00 and (b) PMG shall contribute $216,500.00. Any insurance contribution from PMG's insurer shall offset PMG's contribution only.

    a. Regarding PMG and the 5 Tellers Defendants' respective settlement contributions, the money shall be allocated as follows:

        i. Regarding Plaintiffs Jose Hernandez, Ramon Ferreira and Nicolas Blanco, PMG shall issue all of the payments allocated to them as outlined in Paragraph 2(a)(xiii) through (xviii), a total sum of $66,829.45. Said payments will be issued directly to Jose Hernandez, Ramon Ferreira and Nicolas Blanco, respectively.

        ii. Regarding the payment to be made to Plaintiffs' counsel for costs and fees, PMG shall contribute $74,745.28 of the $155,719.34 total sum owed to them, per Paragraph 2(a)(i) and (ii). PMG shall issue that amount directly to the Rapaport Law Firm, PLLC. The 5 Tellers Defendants shall pay the balance of $80,974.06 to Plaintiffs' counsel, to be split as follows: $6,297.56 to Rapaport Law Firm, PLLC and $74,676.50 to Miller Law Firm, PLLC.

        iii. Regarding the remaining Plaintiffs, a total of $228,951.21 is owed to them. Of that amount, PMG shall contribute $74,925.27. That payment shall be allocated as follows: PMG shall pay the entire amount of the payments identified in Paragraph 2(a)(iv) (*i.e.* $15,621.68) and Paragraph 2(a)(vi) (*i.e.* $35,900.65). PMG shall also pay $23,402.94 of the payment identified in Paragraph 2(a)(viii). PMG shall issue payment directly to the recipients. The 5 Tellers Defendants shall be responsible for the remaining balance of the payment identified in Paragraph 2(a)(viii); and shall pay the entire amount pf the payments identified in Paragraph 2(a) (iii), (v), (vii), (ix), (x), (xi) and (xii). The 5 Teller Defendants shall issue payment directly to the recipients.

    b. PMG shall pay to the 5 Tellers Defendants a total sum of $3,502.95, which reflects a partial payment of the total employer-side payroll taxes for Plaintiffs Waly Ferreira, Ana Liz, Francisco Liz, Mario Villanueva and Johnny Bonilla. The 5 Tellers Defendants shall be responsible for paying the remaining balance of the employer-side payroll taxes for Waly Ferreira, Ana Liz, Francisco Liz, Mario Villanueva and Johnny Bonilla.

i. The 5 Tellers Defendants shall indemnify PMG and PMG's counsel, and shall be solely responsible, for any employer-side taxes and penalties incurred by, or assessed to them regarding the payments made to Waly Ferreira, Ana Liz, Francisco Liz, Mario Villanueva and Johnny Bonilla, less the $3,502.95 payment herein agreed upon.

(e) Within 45 days of the Dismissal Date (defined below), the Defendants shall make the foregoing payments by sending the checks *via* USPS, UPS, or Fedex to the attention of Marc Rapaport, Esq., Rapaport Law Firm, PLLC, 80 Eighth Avenue, Suite 206, New York, New York 10011.

(f) In the event that either PMG or the 5 Tellers Defendants fail to remit their respective portions of the Settlement Amount (as apportioned above) within the time period set forth in subparagraph 2(e) above: (i) Plaintiffs may issue a notice of default to the defaulting Defendant's counsel via overnight mail; and (ii) if the defaulting Defendant fails to deliver its portion of the settlement amount so that it is received, in hand, at Rapaport Law Firm, PLLC within fourteen (14) days after receipt of the notice of default, Plaintiffs shall be entitled to enter judgment in the sum outstanding against the defaulting Defendant. The Court shall retain jurisdiction for the purposes of enforcing this Agreement, including the issuance of the foregoing judgment in the event of a default in payment by either the 5 Tellers Defendants or PMG.

(g) Plaintiffs shall indemnify Defendants and Defendants' counsel, and shall be solely responsible, for any employee-side taxes and penalties incurred by, or assessed to any party or their counsel as a result of Plaintiffs' tax characterization of the Settlement Payment, including any IRS challenge to the characterization of the Settlement Payment in this Agreement.

(h) Plaintiffs acknowledge and agree that: (i) this settlement may result in taxable income to them under applicable federal, state and local tax laws; (ii) Defendants are providing no tax, accounting or legal advice to them, and make no representations regarding any tax obligations or consequences on Plaintiffs' part relating to or arising from this Agreement; (iii) Plaintiffs shall be solely responsible for all of their tax obligations, including, without limitation, all federal, state and local taxes, and all tax liens or claims against the Defendants that may arise from all payments received by them under this Agreement; (iv) Defendants shall each be solely responsible for the employer's share of applicable withholdings and/or payroll taxes, pursuant to the agreed-upon allocation outlined in paragraph 2(d)(a) i., ii. and iii. above; (iv) Plaintiffs shall not seek any indemnification from the Defendants with respect to their tax obligations arising from this Agreement, except for the employer's share of the applicable withholdings and/or payroll taxes; and (v) all Parties shall cooperate and provide information to each other, as reasonably necessary, to allow the Parties to comply with all applicable federal, state and local tax laws.

(i) Plaintiffs acknowledge and agree that, except as expressly provided in this Agreement, Plaintiffs will not claim or receive, any additional compensation, wages, liquidated

damages, bonuses, severance payments, vacation pay or benefits of any kind from the Defendants or any of their respective affiliates, predecessors, successors, owners, employees or agents, solely as those damages relate to the claims released within paragraphs 4-7, and that no contrary representations or promises to the contrary have been made by or on behalf of the Defendants to Plaintiffs.

3. **Excluded Claims.**

    (a) Notwithstanding anything to the contrary in this Agreement, the releases contained in this Agreement shall exclude awards to Plaintiffs from or by a government agency for providing information, as well as any rights or claims that: (a) may arise after the date on which Plaintiffs execute this Agreement; or (b) cannot be released under applicable law (such as worker's compensation and unemployment insurance claims). Further, nothing contained in this Agreement is intended to, nor shall, interfere with Plaintiffs' rights under federal, state, or local civil rights or employment discrimination laws to initiate, testify, assist, comply with a subpoena from, or participate in any manner with an investigation conducted by an appropriate local, state, or federal agency enforcing discrimination laws, none of which shall constitute a breach of this Agreement.

    (b) Notwithstanding the foregoing, the Plaintiffs affirm that they are not and have never been aware of any basis in fact or law to assert any claim against any Defendant that is not released by this Agreement, other than any claims which cannot be released under applicable law.

    (c) Notwithstanding anything to the contrary in this Agreement, Defendants do not waive any defenses, including any and all affirmative defenses, to the excluded claims set forth in the foregoing paragraphs 3(a) and 3(b).

4. **Limited Release By All Plaintiffs, Except Nicolas Blanco, of All Defendants**:

Provided that this Agreement is approved by the Court:

    i. Plaintiffs acknowledge and agree that they are the owners of all claims of any kind which are released pursuant to this Agreement; that no other person or entity has or claims any interest in any potential claims of any kind which are released in this Agreement; that they have not sold, assigned, transferred, conveyed, or otherwise disposed to any other person or entity any claims of any kind which are released pursuant to this Agreement; and that they have not authorized any other person or entity to assert on their behalf any claims of any kind which are released pursuant to this Agreement.

    ii. Plaintiffs acknowledge that the Settlement Payment is made in full and final settlement of any and all demands or claims, asserted or unasserted, which Plaintiffs may have against the Releasees (defined below), for any and all damages they may have suffered or incurred, including but not limited to: compensatory, emotional distress, liquidated and punitive damages or for any other legal or equitable relief including, without

limitation, the amount of any attorneys' fees, costs and expenses which they have incurred or expended in connection with the allegations they made in the Action or settlement thereof.

iii. Plaintiffs acknowledge and agree that the Settlement Payment includes consideration and sums of money which they would not otherwise be entitled to receive from the Releasees.

iv. In consideration of the Settlement Payment and other benefits referred to in this Agreement, Waly Ferreira, Ana Liz, Francisco Liz, Johnny Bonilla, Mario Villanueva, Jose Hernandez and Ramon Ferreira, for themselves and their respective estates, heirs, executors, administrators, successors and assigns (the "RELEASORS") hereby release and discharge Property Management Group, Inc., Victor Owen, Pan Xin, 5 Tellers Associates, L.P., 5 Tellers Housing Development Fund Company, Inc., Parkview Apartments, LLC, John Volandes, and Peter Volandes and their respective individual directors, officers, shareholders, managers, owners, employees, agents, insurers, attorneys, representatives, affiliates, successors and assigns; and the individual releasees' respective estates, heirs, executors, administrators, attorneys, insurers, successors and assigns, and any other known or unknown persons or entities liable or claimed to be liable jointly with the other Releasees herein, all within their individual and official capacities (the "RELEASEES") from any and all liability, actions, causes of action, suits, debts, dues, sums of money, accountings, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, claims, damages, judgments, extents, executions, expenses and costs whatsoever, whether known or unknown, including but not limited to any claims which arise under the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the New York State Labor Law (including claims with the New York Department of Labor), the New York Wage-Hour Law and all claims for wages, compensation, benefits, commissions, and all expenses paid or unpaid during the term of their respective employment, and all claims for compensatory, punitive or liquidated damages, interest, attorneys' fees and costs, only as the claims refer, relate to or arise out of Plaintiffs' claims that were asserted in the Action and those claims which could have been asserted as they relate to Plaintiffs' wages. This release shall apply to all such claims by Plaintiffs from the beginning of time up to the date of the parties' full execution of this Agreement.

v. This RELEASE is in consideration for complete payment for all damages and injuries resulting from the released claims (as outlined in the foregoing subsection), whether known or unknown.

vi. To the fullest extent permitted by law, Plaintiffs covenant and agree never to institute any action or suit at law or in equity pertaining to the released claims as described in this paragraph of this Agreement, individually or as a member of a class. Plaintiffs further acknowledge and agree that this Agreement shall constitute good and sufficient cause on which the Defendants may reject any employer application by Plaintiffs or on their behalf and that such rejection would not constitute a violation of any law. Provided this Agreement is approved by the Court, Defendants release and discharge

Plaintiffs only from such compulsory counterclaims which relate to the Action, whether actually asserted or not.

## 5. General Release by Nicolas Blanco of PMG Only

Provided that this Agreement is Approved by the Court:

i. In consideration of the Settlement Payment and other benefits referred to in this Agreement, Nicolas Blanco, for himself and his estates, heirs, executors, administrators, successors and assigns (the "Blanco Releasors")hereby releases and discharges Property Management Group, Inc., and its individual directors, officers, shareholders, managers, owners, employees, agents, insurers, attorneys, representatives, affiliates, successors and assigns; and Victor Owen, Pan Xin and their respective estates, heirs, executors, administrators, attorneys, insurers, successors and assigns, and any other known or unknown persons or entities liable or claimed to be liable jointly with the other PMG Releasees herein, all within their individual and official capacities (the "PMG Releasees") from any and all liability, actions, causes of action, suits, debts, dues, sums of money, accountings, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, claims, damages, judgments, extents, executions, expenses and costs whatsoever, whether known or unknown, including but not limited to any and all claims under the Americans with Disabilities Act, Title VII of the Civil Rights of 1964, §1981 through §1988 of Title 42 of the U.S.C., the National Labor Relations Act, the Fair Labor Standards Act of 1938, 42 U.S.C. §§ 1981 and 2000e *et seq.*, the Rehabilitation Act of 1973, the Equal Pay Act of 1963, the Older Workers Benefit Protection Act of 1990, the Americans with Disabilities Act of 1990, the Civil Rights Act of 1866, 42 U.S.C. §1981, the Employee Retirement Income Security Act of 1974; the Civil Rights Act of 1991, the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, the Worker Adjustment and Retraining Notification Act of 1988; the Corporate and Criminal Fraud Accountability Act of 2002, 18 U.S.C. §1514A, also known as the Sarbanes-Oxley Act, the New York State Human Rights Law, the New York State Labor Law (including claims with the New York Department of Labor), the New York Wage‑Hour Law, the New York City Administrative Code, the New York City Human Rights Law, and the New York State Insurance Law, all as amended, as well as all claims arising from any collective bargaining agreement, employee benefit plan, express or implied contract, employee handbook, wrongful dismissal, discrimination, retaliation tort, defamation, libel, slander, public policy, law or equity, as well as all claims for wages, compensation, benefits, commissions, and all expenses paid or unpaid during the term of his employment, and all claims for compensatory, punitive or liquidated damages, interest, attorneys' fees and costs. This release shall apply to all such claims by Blanco and the Blanco Releasors from the beginning of time up to the date of the parties' full execution of this Agreement.

ii. Blanco and the Blanco Releasors (as defined below) acknowledge that the Settlement Payment is made in full and final settlement of any and all demands or claims, asserted or unasserted, which they may have against the PMG Releasees, for any and all damages and injuries they may possess, known or unknown, including but not limited

to: compensatory, emotional distress, liquidated and punitive damages or for any other legal or equitable relief including, without limitation, the amount of any attorneys' fees, costs and expenses which they have incurred or expended in connection with the allegations set forth in the Action or settlement thereof.

iii.   Blanco and the Blanco Releasors acknowledge and agree that the Settlement Payment includes consideration and sums of money which they would not otherwise be entitled to receive from the PMG Releasees. Moreover, Blanco acknowledges that $6,500 of the Settlement Payment is additional consideration being paid to him in exchange for the following General Release and for vacating his apartment located at 1392 Boston Road, basement, Bronx, New York (the "Blanco Apartment") (previously provided to him by PMG) within thirty (30) days of the Parties' mediation.

iv.   To the fullest extent permitted by law, Blanco and the Blanco Releasors covenant and agree never to institute any action or suit at law or in equity pertaining to the released claims as described in this paragraph of this Agreement, individually or as a member of a class. Blanco further acknowledges and agrees that this Agreement shall constitute good and sufficient cause on which the Defendants may reject any employer application by Plaintiffs or on their behalf and that such rejection would not constitute a violation of any law.

v.   Blanco and the Blanco Releasors acknowledge and agree that they are the owners of all claims of any kind which are released pursuant to this Agreement; that no other person or entity has or claims any interest in any potential claims of any kind which are released in this Agreement; that they have not sold, assigned, transferred, conveyed, or otherwise disposed to any other person or entity any claims of any kind which are released pursuant to this Agreement; and that they have not authorized any other person or entity to assert on their behalf any claims of any kind which are released pursuant to this Agreement.

6.   **General Release by PMG of Nicolas Blanco Only**

Provided that this Agreement is approved by the Court:

i.   In consideration of the foregoing release and other benefits referred to in this Agreement, PMG, for itself and its individual directors, officers, shareholders, successors and assigns (together, the "PMG Releasors") hereby releases and discharges Nicolas Blanco and his estates, heirs, executors, administrators, successors and assigns (the "the Blanco Releasees") from any and all liability, actions, causes of action, suits, debts, dues, sums of money, accountings, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, claims, damages, judgments, extents, executions, damages, expenses and costs whatsoever, whether known or unknown, including but not limited to any and all claims under the Americans with Disabilities Act, Title VII of the Civil Rights of 1964, §1981 through §1988 of Title 42 of the U.S.C., the National Labor Relations Act, the Fair Labor Standards Act of 1938, 42 U.S.C. §§ 1981 and 2000e *et seq.*, the Rehabilitation Act of 1973, the Equal Pay Act of 1963, the Older Workers Benefit Protection Act of

1990, the Americans with Disabilities Act of 1990, the Civil Rights Act of 1866, 42 U.S.C. §1981, the Employee Retirement Income Security Act of 1974; the Civil Rights Act of 1991, the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, the Worker Adjustment and Retraining Notification Act of 1988; the Corporate and Criminal Fraud Accountability Act of 2002, 18 U.S.C. §1514A, also known as the Sarbanes-Oxley Act, the New York State Human Rights Law, the New York State Labor Law (including claims with the New York Department of Labor), the New York Wage‑Hour Law, the New York City Administrative Code, the New York City Human Rights Law, and the New York State Insurance Law, all as amended, as well as all claims arising from any collective bargaining agreement, employee benefit plan, express or implied contract, employee handbook, wrongful dismissal, discrimination, retaliation tort, defamation, libel, slander, public policy, law or equity. This release shall apply to all such claims from the beginning of time up to the date of the Parties' full execution of this Agreement.

    ii.    To the fullest extent permitted by law, PMG and the PMG Releasors covenant and agree never to institute any action or suit at law or in equity pertaining to the released claims as described in this paragraph of this Agreement, individually or as a member of a class.

    iii.    PMG and the PMG Releasors acknowledge and agree that Nicolas Blanco duly vacated the Blanco Apartment within the agreed-upon time period.

    iv.    PMG and the PMG Releasors acknowledge and agree that they have not sold, assigned, transferred, conveyed, or otherwise disposed to any other person or entity any claims of any kind which are released pursuant to this Agreement; and that they have not authorized any other person or entity to assert on their behalf any claims of any kind which are released pursuant to this Agreement.

7.    **Limited Releases By and Between the Defendants.**

Provided that this Agreement is approved by the Court:

    i.    This Limited Release is by and between Property Management Group, Inc. ("PMG"), on the one hand and 5 Tellers Associates, L.P., 5 Tellers Housing Development Fund Company, Inc., Parkview Apartments, LLC, John Volandes, and Peter Volandes, collectively, on the other hand (collectively, the "5 Tellers Defendants").

    ii.    PMG and the 5 Tellers Defendants, for themselves, their respective directors, officers, board members, shareholders, heirs, executors, administrators, successors and assigns, hereby release and discharge the other from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the other, they ever had, now have or hereafter can, shall or may, have for, upon, and arising from or relating to only the allegations asserted in the

Action, and including those relating to the cross-claims asserted against one another, from the beginning of the world to the date of the full execution of this Agreement.

iii. To the fullest extent permitted by law, PMG and the 5 Tellers Defendants each covenant and agree never to institute any action or suit at law or in equity pertaining to the released claims as described in this paragraph of this Agreement, individually or as a member of a class.

iv. PMG and the 5 Tellers Defendants acknowledge and agree that they have not sold, assigned, transferred, conveyed, or otherwise disposed to any other person or entity any claims of any kind which are released pursuant to this Agreement; and that they have not authorized any other person or entity to assert on their behalf any claims of any kind which are released pursuant to this Agreement.

8. **Effect of Agreement.** This Agreement shall be legally binding on and inure to the benefit of all successors, assigns, executors, guardians and heirs of Plaintiffs, and by signing it, Plaintiffs understand that they are giving up certain rights, including the right to purse the claims raised in the Action.

9. **Execution of the Agreement and Settlement Approval.** As soon as practicable after execution of the Agreement, the Parties shall jointly submit this Agreement to and move the Court for approval of this Agreement, pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). In the event that the Court does not approve this Agreement, as contemplated by this Agreement, this Agreement shall be null and void ab initio. In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution date of this Agreement, and the Parties shall proceed in all respects as though the Agreement had not been executed. Provided, however, that the parties shall negotiate, in good faith, to make such modifications to this Agreement as are reasonably required by the Court for the Court's approval of this Agreement.

10. **Voluntary Dismissal of the Action, with Prejudice; Dismissal Date.** For valuable consideration, including the benefits referred to in this Agreement, receipt of which is hereby acknowledged, Plaintiffs agree and hereby authorize and direct their attorney, upon the Court's entry of an order approving this Agreement, if necessary to effectuate dismissal, to prepare, execute and file with the Court, the Stipulation and Order of Dismissal pursuant to F.R.C.P. 41(a)(1)(A)(II) in the form attached hereto as Exhibit A or in any other form required by the Court, and by executing any other documents necessary to complete such dismissal with prejudice. The "Dismissal Date" shall be the date of the Court's entry of an order dismissing the Action, with prejudice.

11. **Consultation with Legal Counsel.** Defendants hereby advise Plaintiffs to consult with an attorney prior to signing this Agreement. Plaintiffs have consulted with and been represented by counsel in connection with the Action and the negotiations of this Agreement and its terms. Defendants have consulted with and been represented by counsel in connection with the Action and the negotiations of this Agreement and its terms.

12. **Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall be interpreted, construed and enforced in accordance with, and shall be governed by, the laws of the

United States and the State of New York applied to agreements made and to be performed wholly within New York without regard to principles of conflict of laws.

13. **Venue.** The parties hereto acknowledge that any dispute over the terms of this Agreement shall be adjudicated by a court of competent jurisdiction in the United States District Court for the Eastern District of New York and the parties consent to such jurisdiction and agree that venue only in the Eastern District of New York, United States District Court would be proper and hereby waive any challenge thereto based on lack of personal jurisdiction or inconvenient forum.

14. **Entire Agreement and No Modifications.** Each party acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made by any other party or parties, agents, representatives, or attorneys, to induce the execution of this Agreement. This Agreement constitutes a single integrated contract expressing the entire agreement of the parties hereto. There is no other agreement or understanding, written or oral, expressed or implied, among the parties hereto concerning the subject matter hereof, except the agreements set forth in this Agreement. This Agreement constitutes and contains the entire agreement among the parties, and supersede and replace all prior or contemporaneous negotiations, agreements or understandings, proposed or otherwise, written or oral, between them concerning the subject matter hereof. This is an integrated document. This Agreement may not be changed, and no provision contained in this Agreement may be altered, amended, modified, superseded, canceled, waived or terminated, nor may any future representation, promise or condition in connection with the subject matter hereof be binding upon any party, except by an express written agreement duly executed by all parties, or their attorneys on their behalf, which makes specific reference to this Agreement.

15. **Enforceability and Severability.** Provided that this Agreement is approved by the Court, if any provision of this Agreement, or any part thereof (except for the releases in Paragraphs 4-7, which are not severable), is thereafter held by a court of competent jurisdiction to be invalid, unenforceable or against public policy for any reason, this Agreement shall be construed without such term or condition and the remainder of the Agreement shall remain in full force and effect and shall not be affected, impaired or invalidated. If any court construes any provision contained in this Agreement (except for the releases in Paragraphs 4-7) to be unenforceable by reason of being overbroad, such court may reduce the breadth of such provision to the extent necessary to render it enforceable and, in its reduced form, such provision shall then be enforced. In the event a court determines that the releases in Paragraphs 4-7 are invalid, void, unenforceable or against public policy for any reason, then this entire Agreement shall be deemed void (except for this Paragraph) and a court of competent jurisdiction shall determine whether and to what extent Plaintiffs are required to repay any monies paid to them by the Defendants in consideration of this Agreement, including, without limitation, the Settlement Payment described.

16. **Drafter and Interpretation of Agreement.** None of the parties hereto shall be considered the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof. The parties agree that any person or entity interpreting or construing this Agreement shall not apply a presumption that any of its provisions should be more strictly construed against the party who prepared the Agreement as all parties provided substantial input and have fully participated in the preparation of all provisions of this Agreement.

17.     **Attorneys' Fees.** The parties agree that no party shall be considered the prevailing party herein and, notwithstanding the Settlement Payment to be made pursuant to paragraph 2 of this Agreement, they waive any and all claims for attorneys' fees, disbursements, costs and expenses incurred in the Action and the settlement thereof and that each party shall bear their own attorneys' fees.

18.     **No Filing or Assignment of Other Claims.** Plaintiffs represent and agree that, with the exception of this Action, they do not have any other active or pending complaints, charges, lawsuits, or other legal actions with any court or government agency against the Releasees, including without limitation, for injunctive, declaratory, monetary, or other relief, or filed or caused to be filed any charges or complaints against the Releasees with any municipal, local, state or federal agency charged with enforcement of any law.  Plaintiffs also represent and warrant that they have not heretofore assigned or transferred, and will not subsequently assign or transfer, to any person not a party to this Agreement, the claims being herein.

19.     **Waiver.** No waiver of any breach of any term or provision of this Agreement shall be valid unless it is in writing and signed by the party or parties against whom enforcement of such waiver is or may be sought. Waiver of any one provision shall not be deemed to be a waiver of any other provision of this Agreement and waiver of a provision at any time or under any circumstance shall not be deemed a waiver of that provision at any other time or under any other circumstance.

20.     **Headings.** The headings in this Agreement are for convenience of the parties and are not intended to modify the terms of the Agreement.

21.     **Execution in Counterpart and by fax or PDF format.** This Agreement may be executed in counterpart by each party and each executed Agreement, when taken together, shall constitute a complete Agreement. A facsimile or pdf version of this Agreement originally executed shall be accepted and enforceable as if it was an original.

22.     **Voluntary Agreement.** Plaintiffs understand, represent and agree that Plaintiffs: (a) have carefully read and fully understands all of the provisions of this Agreement; (b) Knowingly and voluntarily agree to all of the terms set forth in this Agreement; (c) Knowingly and voluntarily agree to be legally bound by this Agreement; (d) Execute this Agreement on their own free will, without promises, threats or the exertion of duress upon them; (e) Were advised to consider the terms of this Agreement with counsel, had the opportunity to be represented by counsel of their own choosing in deciding to enter into this Agreement, have consulted with counsel prior to executing this Agreement and represent that their counsel has explained to them all of the terms and provisions of this Agreement; (f) Were given a reasonable time to consider their rights and obligations under this Agreement; (g) Were not made any oral promise or representation to induce them to enter into this Agreement; (h) Have relied on their own judgment, and the judgment of their counsel in choosing to enter into this Agreement; (i) Are competent to execute this Agreement and are precluded from seeking to overturn this Agreement on the basis that they were incompetent when they executed it; (j) Were provided an explanation of the terms of this Agreement in their native language and acknowledge that they are precluded from seeking to overturn this Agreement on the basis that they were not read the terms of this Agreement in their native language or that they did not understand the terms; and (k) Are duly authorized and have full authority to execute this Agreement.

**I acknowledge that I have received and reviewed a version of this Agreement and Release, translated to Spanish, my native language, and that translated version of this Agreement is annexed hereto as**

**Exhibit B. I further represent that, before signing this Agreement, I had time to review this Agreement and the opportunity to ask my attorneys any questions I had about the Agreement and the parties' rights and obligations hereunder.**

_____
**WALY FERREIRA**

On the ___ day of December, 2022, Waly Ferreira personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) are subscribed to the AGREEMENT AND RELEASE and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
**ANA LIZ**

On the ___ day of December, 2022, Ana Liz personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) are subscribed to the AGREEMENT AND RELEASE and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
**FRANCISCO LIZ**

On the ___ day of December, 2022, Francisco Liz personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) are subscribed to the AGREEMENT AND RELEASE and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
**JOHNNY BONILLA**

On the ___ day of December, 2022, Johnny Bonilla personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) are subscribed to the AGREEMENT AND RELEASE and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public


_____
**MARIO VILLANUEVA**

On the ___ day of December, 2022, Francisco Liz personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) are subscribed to the AGREEMENT AND RELEASE and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public


_____
**NICOLAS BLANCO**

On the ___ day of December, 2022, Nicolas Blanco personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) are subscribed to the AGREEMENT AND RELEASE and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
**JOSE HERNANDEZ**

On the ___ day of December, 2022, Jose Hernandez personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) are subscribed to the AGREEMENT AND RELEASE and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public


_____
**RAMON FERREIRA**

On the ___ day of December, 2022, Ramon Ferreira personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) are subscribed to the AGREEMENT AND RELEASE and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

**PROPERTY MANAGEMENT GROUP, INC.**

By: _____, President

Dated: _December 13, 2022_

16

**5 TELLERS ASSOCIATES, L.P.**

By: _[signature]_

Dated: _12-21-22_

**5 TELLERS HOUSING DEVELOPMENT FUND COMPANY, INC.**

By: _[signature]_

Dated: _12-16-2022_

**PARKVIEW APARTMENTS, LLC**

By: _[signature]_

Dated: _12-21-2022_

**JOHN VOLANDES**

_[signature]_

Dated: _12-21-22_

**PETER VOLANDES**

_[signature]_

Dated: _12-16-22_

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANA LIZ and WALY FERREIRA,
individually, and on behalf of all others
similarly situated,

                Plaintiffs,

           v.

5 TELLERS ASSOCIATES, L.P., 5 TELLERS
HOUSING DEVELOPMENT FUND
COMPANY, INC., PARKVIEW
APARTMENTS, LLC, PROPERTY
MANAGEMENT GROUP, INC., JOHN
VOLANDES, PETER VOLANDES, and all
related entities,

                Defendants.
--------------------------------------------------------X

20-cv-00212 (RER)

**STIPULATION AND ORDER OF
FINAL DISMISSAL WITH
PREJUDICE**

      **IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned attorneys

of record for the parties to the above-entitled action, that the Settlement Agreement and Release

in this matter having been reviewed by the Court and found to be fair and reasonable, that the

above-captioned action and all claims therein shall be dismissed in its entirety, with prejudice, in

accordance with the terms of the Settlement Agreement and Release, provided, however, that the

United States District Court for the Eastern District of New York shall retain continuing

jurisdiction to enforce and interpret the parties' settlement agreement; and

      **IT IS FURTHER STIPULATED AND AGREED** that this Stipulation may be executed in

counterparts, and that a facsimile or electronic signature on this Stipulation shall have the same

force and effect as an original signature.

- 1 -

MILLER LAW, PLLC and
RAPAPORT LAW FIRM, PLLC
*Attorneys for Plaintiffs*

BOYD RICHARDS PARKER &
COLONNELLI, P.L.
*Attorneys for Defendant Property
Management Group, Inc.*

By: _____

    Meredith R. Miller, Esq.
    167 Madison Ave, Suite 503
    New York, New York 10016
    (347) 878-2587

    Marc A. Rapaport, Esq.
    80 Eighth Avenue, Suite 206
    New York, New York 10011
    (212) 382-1600

By: _____

    Jacqueline L. Aiello, Esq.
    1500 Broadway, Suite 505
    New York, New York 10036
    (212) 400-0626

COFFEY MODICA O'MEARA CAPOWSKI
LLP
*Attorneys for Defendant Property
Management Group, Inc.*

SMITH, BUSS & JACOBS LLP
*Attorneys for 5 Tellers Associates, L.P., 5
Tellers Housing Development Fund
Company, Inc., Parkview Apartments, LLC,
Property Management Group, Inc., John
Volandes, Peter Volandes*

By: _____

    Robert Modica, Esq.
    200 E. Post Road, Suite 210
    White Plains, New York 10601
    (212) 827-4501

By: _____

    John J. Malley, Esq.
    733 Yonkers Avenue, Suite 200
    Yonkers, New York 10704
    (914) 476-0600

Dated: New York, New York
    _____, 2023

Dated: New York, New York
    _____, 2023

SO ORDERED on this _____ day of _____, 2023.

_____

# EXHIBIT B



The Spanish Group LLC
1 Park Plaza, Suite 600
Irvine, CA 92614
United States of America
https://www.thespanishgroup.org

# Certified Translation

Furnished on the **13th** day of **December, 2022**

I, Alexander Largaespada (*Alex Largaespada*), hereby certify that I translated the attached document from Spanish into English or English into Spanish and that this translation is an accurate and faithful translation of the original document. Furthermore, I certify that I am proficient in translating both Spanish and English and that I hold the capacity to render and certify the validity of such a translation. This document has not been translated for a family member, friend, or business associate.

I, Salvador G. Ordorica, as a Quality Assurance Agent of The Spanish Group LLC, hereby attest that the aforementioned translator is a proficient Spanish-English translator. Accordingly, as an authorized representative of The Spanish Group, I certify that this document has been proofread and that the attached document is a faithful and authentic translation of its original.

Respectfully,



**Salvador G. Ordorica**
**The Spanish Group LLC**
**(ATA #267262)**

*The Spanish Group LLC verifies the credentials and/or competency of its translators and the present certification, as well as any attached pages, serves to affirm that the document(s) enumerated above has/have been translated as accurately as possible from its/their original(s). The Spanish Group LLC does not attest that the original document(s) is/are accurate, legitimate, or has/have not been falsified. Through having accepted the terms and conditions set forth in order to contract The Spanish Group LLC's services, and/or through presenting this certificate, the client releases, waives, discharges and relinquishes the right to present any legal claim(s) against The Spanish Group LLC. Consequently, The Spanish Group LLC cannot be held liable for any loss or damage suffered by the Client(s) or any other party either during, after, or arising from the use of The Spanish Group LLC's services.*

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California

County of _____**ORANGE**_____.

On , ___**December 13th, 2022**___ before me, ___**NICOLE A. RENNA NOTARY PUBLIC.**___
(insert name and title of the officer)

personally appeared ___**Salvador G. Ordorica**___,
who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed
to the within instrument and acknowledged to me that he executed the same in his authorized
capacity, and that by his signature on the instrument the person, or the entity upon behalf of which
the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

```
NICOLE A. RENNA
COMMISSION # 2302767
Notary Public - California
ORANGE COUNTY
My Comm. Expires Aug. 24, 2023
```

Signature _____   **(Notary Public Seal)**

## ACUERDO DE TRANSACCIÓN CONCILIATORIA Y EXENCIÓN DE RESPONSABILIDAD

El presente Acuerdo de transacción y exención de responsabilidad (el "Acuerdo") se celebra entre Waly Ferreira, Ana Liz, Francisco Liz, Johnny Bonilla, Mario Villanueva, Nicolás Blanco ("Blanco"), José Hernández y Ramón Ferreira, por una parte (en lo sucesivo denominados colectivamente "Demandantes") y 5 Tellers Associates, L.P., 5 Tellers Housing Development Fund Company, Inc., Parkview Apartments, LLC, John Volandes y Peter Volandes (en lo sucesivo denominados colectivamente los "Demandados de 5 Tellers"), y Property Management Group, Inc. (en lo sucesivo denominado "PMG"; con los Demandados de 5 Tellers, los "Demandados"), por otro lado. El Demandante y los Demandados se denominan colectivamente en este documento como las "Partes".

**CONSIDERANDO QUE**, los Demandantes estaban empleados en varios edificios de apartamentos que eran propiedad de uno o más de los Demandados;

**CONSIDERANDO QUE**, Waly Ferreira y Ana Liz presentaron una Demanda ante el Tribunal de Distrito de los Estados Unidos, Distrito Este de Nueva York (el "Tribunal"), No. de Caso: 20-cv-0212, en nombre propio y de los Demandantes que optan por la demanda, reclamando violaciones de salarios y horas contra los Demandados, incluyendo salarios no pagados y horas extras en virtud de la ley de Normas Razonables de Trabajo ("FLSA") y la Ley Laboral de Nueva York ("NYLL"); incumplimiento en proporcionar declaraciones de salarios, avisos y requisitos de mantenimiento de registros (la "Acción");

**CONSIDERANDO QUE,** existen varias disputas sin resolver entre las Partes, incluyendo, pero sin limitarse a, si y en qué medida los Demandantes trabajaron horas extras, si y en qué medida tienen derecho a cualquier compensación adicional que supuestamente se les debe; y si y en qué medida se les debe a los Demandantes cualquier indemnización por daños y perjuicios, incluyendo daños liquidados, y honorarios de abogados, todo lo cual los Demandados niegan expresamente;

**CONSIDERANDO QUE,** las Partes asistieron a una mediación el 31 de mayo de 2022, y a partir del 2 de junio de 2022 todas las Partes acordaron en principio los términos materiales del acuerdo, y las Partes desean resolver total y definitivamente la Acción;

**CONSIDERANDO QUE,** las Partes reconocen que cada una de ellas ha tenido la oportunidad de consultar con un abogado de su elección y que cada una de ellas ha realizado aportaciones sustanciales a los siguientes términos y acuerdos y declaran que los mismos son justos y equitativos;

**AHORA, POR LO TANTO**, Los Demandantes y los Demandados, en contraprestación a las promesas y pactos mutuos establecidos en el presente documento, cuya recepción y suficiencia se reconocen por la presente, acuerdan lo siguiente:

1.  **Sin admisión de responsabilidad.** El presente Acuerdo no se interpretará en modo alguno como una admisión por parte de ninguno de los Demandados de ninguna violación de cualquiera de los derechos de los Demandantes y se celebra únicamente para evitar los gastos y la incertidumbre de un juicio. Los Demandados niegan expresamente haber violado cualquier derecho de los Demandantes con base en cualquier ley federal, estatal o local relativa a su empleo o reclamaciones de salarios no pagados, o sobre cualquier otra base, y niegan expresamente cualquier responsabilidad frente a los Demandantes. Ni este Acuerdo, ni sus términos, serán admisibles en ninguna acción o procedimiento como evidencia de ningún hecho o conclusión o para ningún propósito, excepto únicamente que este Acuerdo puede ser presentado en cualquier acción o procedimiento que surja de un supuesto incumplimiento de los términos de este Acuerdo como se establece en este documento.

2. **Contraprestación.** Como contraprestación a que los Demandantes celebren este Acuerdo y proporcionen las exenciones, según corresponda, que se establecen a continuación, y siempre que este Acuerdo sea aprobado por el Tribunal, los Demandados acuerdan pagar a los Demandantes y a sus abogados la suma total de Cuatrocientos Cincuenta y Un Mil Quinientos Dólares ($451,500.00; el "Pago del Acuerdo").

(a) $155,719.34 del Pago del Acuerdo se asignará a honorarios de abogados ($145,683.01) y costos ($10,036.33). Los restantes $295,780.66 del Pago del Acuerdo se distribuirán a los Demandantes, de la siguiente manera, con base en una asignación determinada únicamente entre los Demandantes y sus abogados:

  i. Un cheque a nombre de RAPAPORT LAW FIRM, PLLC, por un importe neto de $81,042.84, que deberá declararse en un formulario 1099 del IRS (casilla 3);

  ii. Un cheque a nombre de MILLER LAW, PLLC, por un importe neto de 74,676.50, que deberá declararse en un formulario 1099 del IRS (casilla 3);

  iii. Un cheque a nombre de FRANCISCO LIZ por la cantidad de $15,621.69, del cual se harán las deducciones estimadas en concepto de impuestos y otras retenciones, y para el cual se le expedirá un formulario de impuestos W-2 en el año en que se efectúe el pago;

  iv. Un cheque a nombre de FRANCISCO LIZ por la cantidad de $15,621.68, del cual no se hará retención, deducción ni compensación, y para el cual se le entregará un formulario 1099 del IRS;

  v. Un cheque a nombre de WALY FERRIERA por la cantidad de $35,900.65, del cual se harán las deducciones estimadas en concepto de impuestos y otras retenciones, y para el cual se le expedirá un formulario de impuestos W-2 en el año en que se efectúe el pago;

  vi. Un cheque a nombre de WALY FERRIERA por la cantidad de $35,900.65, del cual no se hará retención, deducción ni compensación, y para el cual se le entregará un formulario 1099 del IRS;

  vii. Un cheque a nombre de JOHNNY BONILLA por la cantidad de $26,357.61, del cual se harán las deducciones estimadas en concepto de impuestos y otras retenciones, y para el cual se le expedirá un formulario de impuestos W-2 en el año en que se efectúe el pago;

  viii. Un cheque a nombre de JOHNNY BONILLA por la cantidad de $26,357.60, del cual no se hará retención, deducción ni compensación, y para el cual se le entregará un formulario 1099 del IRS;

  ix. Un cheque a nombre de MARIO VILLANUEVA por la cantidad de $28,743.37, del cual se harán las deducciones estimadas en concepto de impuestos y otras retenciones, y para el cual se le expedirá un formulario de impuestos W-2 en el año en que se efectúe el pago;

x.     Un cheque a nombre de MARIO VILLANUEVA por la cantidad de $28,743.36, del cual no se hará retención, deducción ni compensación, y para el cual se le entregará un formulario 1099 del IRS;

xi.    Un cheque a nombre de ANA LIZ por la cantidad de $7,852.30, del cual se harán las deducciones estimadas en concepto de impuestos y otras retenciones, y para el cual se le expedirá un formulario de impuestos W-2 en el año en que se efectúe el pago;

xii.   Un cheque a nombre de ANA LIZ por la cantidad de $7,852.30, del cual no se hará retención, deducción ni compensación, y para el cual se le entregará un formulario 1099 del IRS;

xiii.  Un cheque a nombre de NICHOLAS BLANCO por la cantidad de $18,871.69, del cual se harán las deducciones estimadas en concepto de impuestos y otras retenciones, y para el cual se le expedirá un formulario de impuestos W-2 en el año en que se efectúe el pago;

xiv.   Un cheque a nombre de NICHOLAS BLANCO por la cantidad de $18,871.68, del cual no se hará retención, deducción ni compensación, y para el cual se le entregará un formulario 1099 del IRS;

xv.    Un cheque a nombre de JOSE HERNÁNDEZ por la cantidad de $9,657.28, del cual se harán las deducciones estimadas en concepto de impuestos y otras retenciones, y para el cual se le expedirá un formulario de impuestos W-2 en el año en que se efectúe el pago;

xvi.   Un cheque a nombre de JOSE HERNÁNDEZ por la cantidad de $9,657.28, del cual no se hará retención, deducción ni compensación, y para el cual se le entregará un formulario 1099 del IRS;

xvii.  Un cheque a nombre de RAMÓN FERREIRA por la cantidad de $4,885.76, del cual se harán las deducciones estimadas en concepto de impuestos y otras retenciones, y para el cual se le expedirá un formulario de impuestos W-2 en el año en que se efectúe el pago; y

xviii. Un cheque a nombre de RAMÓN FERREIRA por la cantidad de $4,885.76, del cual no se hará retención, deducción ni compensación, y para el cual se le entregará un formulario 1099 del IRS;

(b) Simultáneamente con la ejecución de este Acuerdo, cada Demandante deberá ejecutar y proporcionar a los Demandados los Formularios W4 y W9. En el caso de que un Demandante no haya proporcionado uno de los formularios anteriores, solo la parte de su parte del Pago del Acuerdo que se vea directamente afectada por el formulario faltante se depositará en custodia con los respectivos abogados de los Demandados a la espera de la recepción del formulario faltante, y las circunstancias antes mencionadas no retrasarán, perjudicarán ni afectarán de otro modo las obligaciones de pago de los Demandados de pagar a cualquier otro Demandante sus partes del Pago del Acuerdo; y/o las obligaciones de los Demandados de pagar los honorarios de abogados acordados; y/o cualquier otra suma que no esté directamente relacionada con el formulario de impuestos faltante.

(c) Las Partes acuerdan que cualquier demandante puede insertar "solicitado" en la casilla "b" del Paso 1 de su Formulario W-4. Sin embargo, para cada demandante que inserte "solicitado" en la casilla "b" del paso 1 de su formulario W-4, sus pagos de liquidación, como se ha indicado anteriormente, estarán sujetos a retención a tanto alzado del 24%.

(d) El Pago del Acuerdo se prorrateará entre los Demandados para su pago a los Demandantes de la siguiente manera: (a) los "Demandados de 5 Tellers" aportarán $235,000.00 y (b) PMG aportará $216,500.00. Cualquier contribución de seguro de la aseguradora de PMG compensará únicamente la contribución de PMG.

    a. En lo que respecta a las respectivas contribuciones al acuerdo de PMG y los Demandados de 5 Tellers, el dinero se asignará de la siguiente manera:

        i. En lo que respecta a los Demandantes José Hernández, Ramón Ferreira y Nicolás Blanco, PMG emitirá todos los pagos asignados a ellos como se indica en el Párrafo 2(a)(xiii) a (xviii), una suma total de $66,829.45. Dichos pagos se efectuarán directamente a José Hernández, Ramón Ferreira y Nicolás Blanco, respectivamente.

        ii. En cuanto al pago que debe hacerse a los abogados de los Demandantes en concepto de costas y honorarios, PMG aportará $74,745.28 de la suma total de $155,719.34 que se les adeuda, según el Párrafo 2(a)(i) y (ii). PMG emitirá ese monto directamente a Rapaport Law Firm, PLLC. Los Demandados de 5 Tellers pagarán el saldo de $80,974.06 a los abogados de los Demandantes, que se dividirá de la siguiente manera: $6,297.56 a Rapaport Law Firm, PLLC y $74,676.50 a Miller Law Firm, PLLC.

        iii. En cuanto al resto de demandantes, se les adeuda un total de 228,951.21 dólares. De esa cantidad, PMG aportará $74,925.27. Dicho pago se distribuirá de la siguiente manera: PMG pagará la totalidad de los pagos identificados en el Párrafo 2(a)(iv) (es decir, $15,621.68) y en el Párrafo 2(a)(vi) (es decir, $35,900.65). PMG también pagará $23,402.94 del pago identificado en el Párrafo 2(a)(viii). PMG emitirá el pago directamente a los beneficiarios. Los Demandados de 5 Tellers serán responsables del saldo restante del pago identificado en el Párrafo 2(a)(viii); y aportarán el monto total de los pagos identificados en el Párrafo 2(a)(iii), (v), (vii), (ix), (x), (xi) y (xii). La parte 5 Teller Defendants emitirá el pago directamente a los destinatarios.

    b. PMG pagará a los Demandados de 5 Tellers una suma total de $3,502.95, que refleja un pago parcial del total de los impuestos de nómina del lado del empleador para los Demandantes Waly Ferreira, Ana Liz, Francisco Liz, Mario Villanueva y Johnny Bonilla. Los Demandados de 5 Tellers serán responsables de pagar el saldo restante de los impuestos sobre la nómina del lado del empleador de Waly Ferreira, Ana Liz, Francisco Liz, Mario Villanueva y Johnny Bonilla.

i. Los Demandados de 5 Tellers indemnizarán a PMG y a los abogados de PMG, y serán los únicos responsables de cualquier impuesto patronal y penalidades del lado del empleador incurridos o aplicados en relación con los pagos realizados a Waly Ferreira, Ana Liz, Francisco Liz, Mario Villanueva y Johnny Bonilla, menos el pago de $3,502.95 aquí acordado.

(e) En un plazo de 45 días a partir de la Fecha de Desestimación (definida a continuación), los Demandados deberán efectuar los pagos anteriores enviando los cheques a través de USPS, UPS o Fedex a la atención del Lic. Marc Rapaport, Rapaport Law Firm, PLLC, 80 Eighth Avenue, Suite 206, New York, New York 10011.

(f) En el evento de que PMG o los Demandados de 5 Tellers no remitan sus respectivas porciones del Importe del Acuerdo (según el prorrateo anterior) dentro del plazo establecido en el subpárrafo 2(e) anterior: (i) Los Demandantes podrán emitir un aviso de incumplimiento al abogado del Demandado incumplidor por correo de un día para otro; y (ii) si el Demandado incumplidor no entrega su parte del importe del acuerdo de forma que se reciba en mano por Rapaport Law Firm, PLLC dentro de los catorce (14) días siguientes a la recepción de la notificación de incumplimiento, los Demandantes tendrán derecho a dictar sentencia por la suma pendiente contra el Demandado incumplidor. El Tribunal conservará la jurisdicción a los efectos de la ejecución del presente Acuerdo, incluida la emisión de la sentencia anterior en caso de incumplimiento de pago por parte de los Demandados de 5 Tellers o PMG.

(g) Los Demandantes indemnizarán a los Demandados y a los abogados de los Demandados, y serán los únicos responsables, de cualquier impuesto y sanción del lado de los empleados en que incurran o que se impongan a cualquiera de las partes o a sus abogados como resultado de la caracterización fiscal del Pago del Acuerdo por parte de los Demandantes, incluida cualquier impugnación del IRS de la caracterización del pago del acuerdo en el presente Acuerdo.

(h) Los Demandantes reconocen y aceptan que: (i) este acuerdo puede dar lugar a ingresos imponibles para ellos en virtud de las leyes fiscales federales, estatales y locales aplicables; (ii) los Demandados no les están proporcionando ningún asesoramiento fiscal, contable o legal, y no hacen ninguna representación con respecto a cualquier obligación o consecuencia fiscal por parte de los Demandantes en relación con este Acuerdo o que surjan de él;
(iii) Los Demandantes serán los únicos responsables de todas sus obligaciones fiscales, incluyendo, pero no limitado a, todos los impuestos federales, estatales y locales, y todos los gravámenes fiscales o reclamaciones contra los Demandados que puedan surgir de todos los pagos recibidos por ellos en virtud del presente Acuerdo;
(iv) Cada uno de los demandados será el único responsable de la parte correspondiente al empleador de las retenciones y/o impuestos sobre la nómina aplicables, de conformidad con la asignación acordada descrita en el apartado 2(d)(a) i., ii. y iii. anteriores; (iv) los Demandantes no solicitarán indemnización alguna a los Demandados con respecto a sus obligaciones fiscales derivadas del presente Acuerdo, excepto por la parte correspondiente al empleador de las retenciones y/o impuestos sobre la nómina aplicables; y
(v) todas las Partes cooperarán y se facilitarán información mutuamente, según sea razonablemente necesario, para que las Partes puedan cumplir todas las leyes fiscales federales, estatales y locales aplicables.

(i) Los Demandantes reconocen y aceptan que, salvo lo dispuesto expresamente en el presente Acuerdo, los Demandantes no reclamarán ni recibirán, ninguna compensación adicional, salarios, daños liquidados, bonificaciones, indemnizaciones por despido, paga de

vacaciones o beneficios de ningún tipo de los Demandados o cualquiera de sus respectivas filiales, predecesores, sucesores, propietarios, empleados o agentes, únicamente en la medida en que dichos daños se relacionen con las reclamaciones liberadas dentro de los párrafos 4-7, y que ninguna declaración o promesa en contrario ha sido hecha por o en nombre de los Demandados a los Demandantes.

**3.    Reclamaciones excluidas.**

(a) Sin perjuicio de cualquier disposición en contrario contenida en el presente Acuerdo, las exoneraciones contenidas en el presente Acuerdo excluirán las indemnizaciones concedidas a los Demandantes de o por un organismo gubernamental por facilitar información, así como cualquier derecho o reclamación que (a) puedan surgir después de la fecha en que los Demandantes firmen el presente Acuerdo; o (b) no puedan ser exonerados en virtud de la legislación aplicable (como las reclamaciones de indemnización laboral y seguro de desempleo). Además, nada de lo contenido en este Acuerdo pretende interferir, ni interferirá, con los derechos de los Demandantes en virtud de las leyes federales, estatales o locales de derechos civiles o discriminación laboral para iniciar, testificar, ayudar, cumplir con una citación o participar de cualquier manera en una investigación llevada a cabo por una agencia local, estatal o federal apropiada que haga cumplir las leyes contra la discriminación, ninguna de las cuales constituirá un incumplimiento de este Acuerdo.

(b) No obstante lo anterior, los Demandantes afirman que no tienen ni nunca han tenido conocimiento de ninguna base de hecho o de derecho para hacer valer ninguna reclamación contra ningún Demandado que no esté exonerada por el presente Acuerdo, salvo las reclamaciones que no puedan ser exoneradas en virtud de la ley aplicable.

(c) Sin perjuicio de cualquier disposición en contrario en el presente Acuerdo, los Demandados no renuncian a ninguna defensa, incluidas todas y cada una de las defensas afirmativas, frente a las reclamaciones excluidas establecidas en los anteriores apartados 3(a) y 3(b).

**4.    Exención limitada de responsabilidad por parte de todos los Demandantes, excepto Nicolas Blanco, de todos los Demandados:**

Siempre que este Acuerdo sea aprobado por el Tribunal:

i.    Los Demandantes reconocen y aceptan que son los propietarios de todas las reclamaciones de cualquier tipo que se liberen en virtud del presente Acuerdo; que ninguna otra persona o entidad tiene o reclama ningún interés en las posibles reclamaciones de cualquier tipo que se exoneran en el presente Acuerdo; que no han vendido, cedido, transferido, traspasado o dispuesto de otro modo a ninguna otra persona o entidad ninguna reclamación de cualquier tipo que se libere en virtud del presente Acuerdo; y que no han autorizado a ninguna otra persona o entidad a hacer valer en su nombre ninguna reclamación de cualquier tipo que se libere en virtud del presente Acuerdo.

ii.    Los Demandantes reconocen que el Pago del Acuerdo se efectúa como liquidación total y definitiva de todas y cada una de las demandas o reclamaciones, declaradas o no, que los Demandantes puedan tener contra los Destinatarios del Descargo (definidos a continuación), por todos y cada uno de los daños y perjuicios que puedan haber sufrido o en los que puedan haber incurrido, incluyendo, pero no limitado a: daños y perjuicios compensatorios, angustia emocional, liquidados y punitivos o por

cualquier otra reparación legal o equitativa, incluyendo, pero no limitado a, el importe de los honorarios de abogados, costos y gastos en los que hayan incurrido o gastado en relación con las acusaciones que presentaron en la Demanda o la liquidación de la misma.

iii.     Los Demandantes reconocen y aceptan que el Pago del Acuerdo incluye contraprestaciones y sumas de dinero que, de otro modo, no tendrían derecho a recibir de los Destinatarios del Descargo.

iv.     En contraprestación al Pago del Acuerdo y otros beneficios mencionados en este Acuerdo, Waly Ferreira, Ana Liz, Francisco Liz, Johnny Bonilla, Mario Villanueva, José Hernández y Ramón Ferreira, por sí mismos y sus respectivos patrimonios, herederos, albaceas, administradores, sucesores y cesionarios (los "EXONERADOS") por el presente liberan y eximen a Property Management Group, Inc., Victor Owen, Pan Xin, 5 Tellers Associates, L.P., 5 Tellers Housing Development Fund Company, Inc., Parkview Apartments, LLC, John Volandes y Peter Volandes y sus respectivos directores individuales, funcionarios, accionistas, gerentes, propietarios, empleados, agentes, aseguradores, abogados, representantes, afiliados, sucesores y cesionarios; y los respectivos patrimonios, herederos, albaceas, administradores, abogados, aseguradores, sucesores y cesionarios de los exonerados individuales, y cualquier otra persona o entidad conocida o desconocida responsable o supuestamente responsable conjuntamente con los otros exonerados del presente, todos dentro de sus capacidades individuales y oficiales (los "EXONERADOS") de toda y cualquier responsabilidad, acciones, causas de acción, pleitos, deudas, cuotas, sumas de dinero, contabilidades, recuentos, fianzas, letras, especialidades, pactos, contratos, controversias, acuerdos, promesas, desviaciones, intrusiones, reclamaciones, daños y perjuicios, sentencias, extensiones, ejecuciones, gastos y costes de cualquier tipo, ya sean conocidos o desconocidos, incluyendo, pero no limitado a, las reclamaciones que surjan en virtud de la Ley de Normas Laborales Justas de 1938, la Ley de Igualdad Salarial de 1963, la Ley Laboral del Estado de Nueva York (incluidas las reclamaciones ante el Departamento de Trabajo de Nueva York), la Ley de Salarios y Horas de Nueva York y todas las reclamaciones por salarios, indemnizaciones, prestaciones, comisiones, y todos los gastos pagados o no pagados durante la vigencia de sus respectivos empleos, y todas las reclamaciones por daños compensatorios, punitivos o liquidados, intereses, honorarios de abogados y costas, solo en la medida en que las reclamaciones se refieran, se relacionen o surjan de las reclamaciones de los Demandantes que se hicieron valer en la Acción y aquellas reclamaciones que podrían haberse hecho valer en la medida en que se relacionen con los salarios de los Demandantes. Esta exoneración se aplicará a todas esas reclamaciones de los Demandantes desde la fecha de inicio hasta la fecha de la plena ejecución del presente Acuerdo por las partes.

v.     Esta EXENCIÓN es en contraprestación por el pago completo de todos los daños y perjuicios resultantes de las reclamaciones exoneradas (como se indica en la subsección anterior), ya sean conocidos o desconocidos.

vi.     En la medida tan amplia como lo permita por la ley, los Demandantes se comprometen y aceptan no entablar nunca una acción o demanda legal o en equidad en relación con las reclamaciones exoneradas descritas en este párrafo del presente Acuerdo, individualmente o como miembro de una clase. Los Demandantes además reconocen y aceptan que este Acuerdo constituirá una causa buena y suficiente por la que los Demandados podrán rechazar cualquier solicitud del empleador por parte de los Demandantes o en su nombre y que dicho rechazo no constituiría una violación de ninguna ley. Siempre que este Acuerdo sea aprobado por el Tribunal, los Demandados

liberan y eximen a los Demandantes únicamente de las reconvenciones obligatorias relacionadas con la Acción, se afirme o no en la práctica.

**5.      Exención general por Nicolás Blanco a PMG solamente**

Siempre que este Acuerdo sea aprobado por el Tribunal:

i.      Como contraprestación por el pago de la liquidación y demás beneficios a los que se hace referencia en el presente Acuerdo, Nicolás Blanco, en su nombre y en el de sus sucesores, herederos, albaceas, administradores, sucesores y cesionarios (los "Exonerados de Blanco"), por el presente libera y exime de responsabilidad a Property Management Group, Inc, y a sus directores individuales, funcionarios, accionistas, gerentes, propietarios, empleados, agentes, aseguradores, abogados, representantes, afiliados, sucesores y cesionarios; y Victor Owen, Pan Xin y sus respectivos patrimonios, herederos, albaceas, administradores, abogados, aseguradores, sucesores y cesionarios, y cualquier otra persona o entidad conocida o desconocida responsable o reclamada como responsable conjuntamente con otros Exonerados de PMG en este documento, todos dentro de sus capacidades individuales y oficiales (los "Exonerados de PMG") de cualquier y toda responsabilidad, acciones, causas de acción, juicios, deudas, cuotas, sumas de dinero, contabilidad, cómputos, bonos, facturas, especialidades, pactos, contratos, controversias, acuerdos, promesas, variaciones, transgresiones, reclamos, daños, sentencias, alcances, ejecuciones, gastos y costos de cualquier tipo, ya sean conocidos o desconocidos, incluyendo, pero no limitado a, todos y cada uno de los reclamos en virtud de la Ley de Estadounidenses con Discapacidades, Título VII de los Derechos Civiles de 1964, §1981 a §1988 del Título 42 del U.S.C., la Ley Nacional de Relaciones Laborales, la Ley de Normas Laborales Justas de 1938, 42 U.S.C. §§ 1981 y 2000e et seq., la Ley de Rehabilitación de 1973, la Ley de Igualdad Salarial de 1963, la Ley de Protección de Beneficios para Trabajadores Mayores de 1990, la Ley de Estadounidenses con Discapacidades de 1990, la Ley de Derechos Civiles de 1866, 42 U.S.C. §1981, la Ley de Seguridad de los Ingresos de Jubilación de los Empleados de 1974; la Ley de Derechos Civiles de 1991, la Ley de Licencia Familiar y Médica de 1993, 29 U.S.C. § 2601 y ss, la Ley de Notificación de Ajuste y Recualificación de los Trabajadores de 1988; la Ley de Responsabilidad Corporativa y Penal por Fraude de 2002, 18 U.S.C. §1514A, también conocida como Ley Sarbanes-Oxley, la Ley de Derechos Humanos del Estado de Nueva York, la Ley Laboral del Estado de Nueva York (incluidas las reclamaciones ante el Departamento de Trabajo de Nueva York), la Ley de Salarios y Horas de Nueva York, el Código Administrativo de la Ciudad de Nueva York, la Ley de Derechos Humanos de la Ciudad de Nueva York y la Ley de Seguros del Estado de Nueva York, todas ellas en su versión modificada, así como todas las reclamaciones derivadas de cualquier convenio colectivo, plan de prestaciones para empleados, contrato expreso o implícito, manual del empleado, despido injustificado, discriminación, agravio por represalias, difamación, libelo, calumnia, política pública, ley o equidad, así como todas las reclamaciones por salarios, compensaciones, beneficios, comisiones y todos los gastos pagados o no pagados durante la vigencia de su empleo, y todas las reclamaciones por daños compensatorios, punitivos o liquidados, intereses, honorarios y costos de abogados. Esta exención se aplicará a todas las reclamaciones de Blanco y los Exonerados de Blanco desde la fecha de inicio hasta la fecha de ejecución total de este Acuerdo por las partes.

ii.     Blanco y los Exonerados de Blanco (según se definen a continuación) reconocen que el Pago del Acuerdo se efectúa como liquidación total y definitiva de todas y cada una de las demandas o reclamaciones, declaradas o no, que puedan tener contra los Destinatarios del Descargo PMG, por todos y cada uno de los daños y perjuicios que puedan poseer, conocidos o desconocidos, incluyendo, pero no limitado a, los siguientes:

8

compensación, angustia emocional, daños liquidados y punitivos o por cualquier otra compensación legal o equitativa incluyendo, pero no limitado a, el importe de los honorarios de abogados, costes y gastos en los que hayan incurrido o gastado en relación con las acusaciones expuestas en la Acción o la resolución de la misma.

iii.   Blanco y los Exonerados de Blanco reconocen y aceptan que el Pago del Acuerdo incluye contraprestaciones y sumas de dinero que de otro modo no tendrían derecho a recibir de los Destinatarios del Descargo PMG. Además, Blanco reconoce que $6,500 del Pago del Acuerdo es una contraprestación adicional que se le paga a cambio del siguiente Descargo General y por desocupar su apartamento ubicado en 1392 Boston Road, sótano, Bronx, Nueva York (el "Apartamento de Blanco") (previamente proporcionado a él por PMG) dentro de treinta (30) días de la mediación de las Partes.

iv.   En la medida tan amplia como la ley lo permita, Blanco y los Exonerados de Blanco se comprometen y acuerdan nunca entablar una acción o demanda legal o en equidad relativa a las reclamaciones exoneradas descritas en este párrafo del presente Acuerdo, individualmente o como miembro de una clase. Blanco además reconoce y acepta que este Acuerdo constituirá una causa buena y suficiente por la que los Demandados podrán rechazar cualquier solicitud del empleador por parte de los Demandantes o en su nombre y que dicho rechazo no constituiría una violación de ninguna ley.

v.    Blanco y los Exonerados de Blanco reconocen y aceptan que son los propietarios de todas las reclamaciones de cualquier tipo que se liberen en virtud del presente Acuerdo; que ninguna otra persona o entidad tiene o reclama ningún interés en las posibles reclamaciones de cualquier tipo que se exoneran en el presente Acuerdo; que no han vendido, cedido, transferido, traspasado o dispuesto de otro modo a ninguna otra persona o entidad ninguna reclamación de cualquier tipo que se libere en virtud del presente Acuerdo; y que no han autorizado a ninguna otra persona o entidad a hacer valer en su nombre ninguna reclamación de cualquier tipo que se libere en virtud del presente Acuerdo.

## 6.    Exención general por PMG a Nicolás Blanco solamente

Siempre que este Acuerdo sea aprobado por el Tribunal:

i.    En contraprestación a la exoneración anterior y otros beneficios a los que se hace referencia en este Acuerdo, PMG, para sí misma y sus directores, funcionarios, accionistas, sucesores y cesionarios individuales (en conjunto, los "Exonerados de PMG") por la presente libera y exime a Nicolás Blanco y sus bienes, herederos, albaceas, administradores, sucesores y cesionarios (los "Exonerados de Blanco") de cualquier y toda responsabilidad, acciones, causas de acción, juicios, deudas, cuotas, sumas de dinero, contabilidad, cómputos, bonos, letras, especialidades, pactos, contratos, controversias, acuerdos, promesas, variaciones, transgresiones, reclamos, daños, juicios, alcances, ejecuciones, daños, gastos y costos de cualquier tipo, ya sean conocidos o desconocidos, incluidos, entre otros, todos y cada uno de los reclamos en virtud de la Ley de Estadounidenses con Discapacidades, el Título VII de los Derechos Civiles de 1964, §1981 a §1988 del Título 42 del U.S.C., Ley Nacional de Relaciones Laborales, Ley de Normas Laborales Justas de 1938, 42 U.S.C. §§ 1981 y 2000e et seq., la Ley de Rehabilitación de 1973, la Ley de Igualdad Salarial de 1963, la Ley de Protección de Beneficios para Trabajadores de Edad Avanzada de 1990, la

Ley de Estadounidenses con Discapacidad de 1990; la Ley de Derechos Civiles de 1866, 42 U.S.C. §1981, la Ley de Seguridad de los Ingresos de Jubilación de los Empleados de 1974; la Ley de Derechos Civiles de 1991, la Ley de Licencia Familiar y Médica de 1993, 29 U.S.C. § 2601 y ss, la Ley de Notificación de Ajuste y Recualificación de los Trabajadores de 1988; la Ley de Responsabilidad Corporativa y Penal por Fraude de 2002, 18 U.S.C. §1514A, también conocida como Ley Sarbanes-Oxley, la Ley de Derechos Humanos del Estado de Nueva York, la Ley Laboral del Estado de Nueva York (incluidas las reclamaciones ante el Departamento de Trabajo de Nueva York), la Ley de Salarios y Horas de Nueva York, el Código Administrativo de la Ciudad de Nueva York, la Ley de Derechos Humanos de la Ciudad de Nueva York y la Ley de Seguros del Estado de Nueva York, todas ellas en su versión modificada, así como todas las reclamaciones derivadas de cualquier convenio colectivo, plan de prestaciones para empleados, contrato expreso o implícito, manual del empleado, despido injustificado, discriminación, agravio por represalias, difamación, libelo, calumnia, política pública, ley o equidad. Esta exoneración se aplicará a todas esas reclamaciones desde la fecha de inicio hasta la fecha de la plena ejecución del presente Acuerdo por las partes.

ii.    En la medida tan amplia como la ley lo permita, PMG y los Exonerados de PMG se comprometen y acuerdan nunca entablar una acción o demanda legal o en equidad relativa a las reclamaciones exoneradas descritas en este párrafo del presente Acuerdo, individualmente o como miembro de una clase.

iii.   PMG y los Exonerados de PMG reconocen y aceptan que Nicolás Blanco desocupó debidamente el Apartamento de Blanco dentro del período de tiempo acordado.

iv.    PMG y los Exonerados de PMG reconocen y aceptan que no han vendido, cedido, transferido, traspasado, o dispuesto de cualquier otra forma a cualquier otra persona o entidad cualquier reclamación de cualquier tipo que sea exonerada conforme a este Acuerdo; y que no han autorizado a ninguna otra persona o entidad a hacer valer en su nombre cualquier reclamación de cualquier tipo que sea exonerada conforme a este Acuerdo.

**7.    Exención de responsabilidad por y entre los Demandados.**

Siempre que este Acuerdo sea aprobado por el Tribunal:

i.     Esta exención de responsabilidad Limitada es por y entre Property Management Group, Inc. ("PMG"), por una parte y 5 Tellers Associates, L.P., 5 Tellers Housing Development Fund Company, Inc., Parkview Apartments, LLC, John Volandes, y Peter Volandes, colectivamente, por otra parte (colectivamente, los "Demandados de 5 Tellers").

ii.    PMG y los Demandados de 5 Tellers, por sí mismos, sus respectivos directores, funcionarios, miembros del consejo, accionistas, herederos, albaceas, administradores, sucesores y cesionarios, por la presente liberan y descargan al otro de todas las acciones, causas de acción, juicios, deudas, cuotas, sumas de dinero, cuentas, cómputos, bonos, facturas, especialidades, pactos, contratos, controversias, acuerdos, promesas, variaciones, infracciones, daños y perjuicios, sentencias, extensiones, ejecuciones, reclamaciones y demandas de cualquier tipo, en derecho, almirantazgo o equidad, que hayan tenido, tengan ahora o puedan tener en el futuro contra la otra parte por, sobre y derivadas de o relacionadas únicamente con las

acusaciones afirmadas en la Acción, e incluidas las relativas a las reclamaciones cruzadas formuladas entre sí, desde la fecha de inicio hasta la fecha de la ejecución total de este Acuerdo.

iii.   En la medida tan amplia como la ley lo permita, PMG y los Demandados de 5 Tellers se comprometen y acuerdan nunca entablar una acción o demanda legal o en equidad relativa a las reclamaciones exoneradas descritas en este párrafo del presente Acuerdo, individualmente o como miembro de una clase.

iv.   PMG y los Demandados de 5 Tellers reconocen y aceptan que no han vendido, cedido, transferido, traspasado o dispuesto de cualquier otra forma a cualquier otra persona o entidad cualquier reclamación de cualquier tipo que sea exonerada conforme a este Acuerdo; y que no han autorizado a ninguna otra persona o entidad a hacer valer en su nombre cualquier reclamación de cualquier tipo que sea exonerada conforme a este Acuerdo.

8.   **Efecto del Acuerdo.** Este Acuerdo será legalmente vinculante y redundará en beneficio de todos los sucesores, cesionarios, albaceas, tutores y herederos de los Demandantes, y al firmarlo, los Demandantes entienden que renuncian a ciertos derechos, incluido el derecho a realizar las reclamaciones planteadas en la acción.

9.   **Ejecución y Aprobación del acuerdo.** Tan pronto como sea posible después de la firma del Acuerdo, las Partes presentarán conjuntamente este Acuerdo al Tribunal y solicitarán su aprobación, de conformidad con *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015). En caso de que el Tribunal no apruebe el presente Acuerdo, tal y como se contempla en el mismo, el presente Acuerdo será nulo de pleno derecho. En tal caso, las Partes volverán a su situación respectiva en la fecha inmediatamente anterior a la fecha de ejecución del presente Acuerdo, y las Partes procederán en todos los aspectos como si el Acuerdo no se hubiera ejecutado. No obstante, las partes negociarán, de buena fe, para introducir en este Acuerdo las modificaciones que razonablemente requiera el Tribunal para su aprobación.

10.   **Desestimación Voluntaria de la Acción, con Prejuicio; Fecha de Desestimación.** A cambio de una valiosa contraprestación, incluidos los beneficios a los que se hace referencia en este Acuerdo, cuya recepción se acusa por la presente, los Demandantes acuerdan y por el presente autorizan y ordenan a su abogado, una vez que el Tribunal emita una orden aprobando este Acuerdo, si fuera necesario para efectuar la desestimación, que prepare, ejecute y presente ante el Tribunal, la Estipulación y Orden de Desestimación de conformidad con F.R.C.P. 41(a)(1)(A)(II) en el formulario adjunto como Anexo A o en cualquier otro formulario requerido por el Tribunal, y mediante la ejecución de cualquier otro documento necesario para completar dicha desestimación con perjuicio. La "Fecha de Desestimación" será la fecha en que el Tribunal dicte una orden por la que se desestime el Recurso, con perjuicio.

11.   **Consulta con el Asesor Jurídico.** Por la presente, los Demandados aconsejan a los Demandantes que consulten con un abogado antes de firmar este Acuerdo. Los Demandantes han consultado y han sido representados por un abogado en relación con la Acción y las negociaciones del presente Acuerdo y sus términos. Los Demandados han consultado y han sido representados por un abogado en relación con la Acción y las negociaciones del presente Acuerdo y sus términos.

12.   **Ley aplicable.** El presente Acuerdo y los derechos y obligaciones de las partes en virtud del mismo se interpretarán y aplicarán de conformidad con las leyes de los Estados Unidos y se regirán por ellas.

Los Estados Unidos y el Estado de Nueva York se adhieren a los acuerdos celebrados y que deben ejecutarse íntegramente en Nueva York, sin tener en cuenta los principios de conflicto de leyes.

13.     **Tribunal.** Las partes del presente reconocen que cualquier disputa sobre los términos de este Acuerdo será resuelta por un tribunal de jurisdicción competente en el Tribunal de Distrito de los Estados Unidos para el Distrito Este de Nueva York y las partes consienten a dicha jurisdicción y acuerdan que solo el Tribunal de Distrito del Distrito Este de Nueva York en los Estados Unidos sería apropiado y por la presente renuncian a cualquier impugnación basada en la falta de jurisdicción personal o foro inconveniente.

14.     **Acuerdo completo y sin modificaciones.** Cada una de las partes reconoce que, salvo lo expresamente establecido en el presente documento, ninguna otra parte o partes, agentes, representantes o abogados han realizado declaraciones de ningún tipo o carácter para inducir la ejecución del presente Acuerdo. El presente Acuerdo constituye un único contrato integrado que expresa el acuerdo completo de las partes. No existe ningún otro acuerdo o entendimiento, escrito u oral, expreso o implícito, entre las partes del presente en relación con el objeto del mismo, excepto los acuerdos establecidos en el presente Acuerdo. Este Acuerdo constituye y contiene el acuerdo completo entre las partes, y sustituye y reemplaza todas las negociaciones, acuerdos o entendimientos previos o contemporáneos, propuestos o no, escritos u orales, entre ellos en relación con el objeto del presente. Este es un documento integrado. El presente Acuerdo no podrá modificarse, y ninguna disposición contenida en el mismo podrá alterarse, enmendarse, modificarse, sustituirse, cancelarse, renunciarse o rescindirse, ni ninguna declaración, promesa o condición futura en relación con el objeto del presente Acuerdo podrá ser vinculante para ninguna de las partes, salvo mediante un acuerdo expreso por escrito debidamente firmado por todas las partes, o por sus abogados en su nombre, que haga referencia específica al presente Acuerdo.

15.     **Exigibilidad y divisibilidad.** Siempre que este Acuerdo sea aprobado por el Tribunal, si alguna disposición de este Acuerdo, o cualquier parte del mismo (excepto las exoneraciones de los Párrafos 4-7, que no son divisibles), es considerada posteriormente por un tribunal de jurisdicción competente como inválida, inaplicable o contraria al orden público por cualquier razón, este Acuerdo se interpretará sin dicho término o condición y el resto del Acuerdo permanecerá en pleno vigor y efecto y no se verá afectado, perjudicado o invalidado. Si un tribunal considera que alguna de las disposiciones contenidas en el presente Acuerdo (excepto las exenciones de los apartados 4 a 7) no es aplicable por ser excesivamente amplia, dicho tribunal podrá reducir la amplitud de dicha disposición en la medida necesaria para hacerla aplicable y, en su forma reducida, dicha disposición será entonces aplicable. En el caso de que un tribunal determine que las exoneraciones de los Párrafos 4-7 son inválidas, nulas, inaplicables o contrarias al orden público por cualquier motivo, entonces todo este Acuerdo se considerará nulo (excepto este Párrafo) y un tribunal de jurisdicción competente determinará si y en qué medida los Demandantes están obligados a reembolsar cualquier dinero que les hayan pagado los Demandados en contraprestación a este Acuerdo, incluyendo, pero no limitado a, el Pago del Acuerdo descrito.

16.     **Redactor e interpretación del Acuerdo.** Ninguna de las partes del presente se considerará redactora del presente Acuerdo ni de ninguna de sus disposiciones a los efectos de cualquier ley, jurisprudencia o norma de interpretación o construcción que pudiera hacer que cualquier disposición se interpretara en contra del redactor del mismo. Las partes acuerdan que cualquier persona o entidad que interprete el presente Acuerdo no aplicará una presunción de que cualquiera de sus disposiciones debe interpretarse más estrictamente en contra de la parte que preparó el Acuerdo, ya que todas las partes hicieron aportaciones sustanciales y han participado plenamente en la preparación de todas las disposiciones del presente Acuerdo.

17. **Honorarios de abogados.** Las partes acuerdan que ninguna de las partes será considerada la parte vencedora y, sin perjuicio del pago del acuerdo que se efectuará de conformidad con el apartado 2 del presente Acuerdo, renuncian a todas y cada una de las reclamaciones de honorarios de abogados, desembolsos, costes y gastos incurridos en la Acción y en la resolución de la misma, y que cada una de las partes correrá con sus propios honorarios de abogados.

18. **Sin presentación o cesión de otras reclamaciones.** Los Demandantes declaran y aceptan que, con la excepción de esta Acción, no tienen ninguna otra queja activa o pendiente, cargos, demandas u otras acciones legales ante ningún tribunal o agencia gubernamental contra los Exonerados, incluyendo, pero no limitado a, por desagravio por mandato judicial, declaratorio, monetario o de otro tipo, ni han presentado o hecho que se presenten cargos o quejas contra los Exonerados ante ninguna agencia municipal, local, estatal o federal encargada de hacer cumplir ninguna ley. Los Demandantes también declaran y garantizan que no han cedido ni transferido hasta la fecha, y que no cederán ni transferirán posteriormente, a ninguna persona que no forme parte de este Acuerdo, las reclamaciones contenidas en este documento.

19. **Exención.** Ninguna renuncia al incumplimiento de cualquier término o disposición del presente Acuerdo será válida a menos que conste por escrito y esté firmada por la parte o partes contra las que se solicite o pueda solicitarse la ejecución de dicha renuncia. La renuncia a una disposición no se considerará una renuncia a cualquier otra disposición del presente Acuerdo y la renuncia a una disposición en cualquier momento o bajo cualquier circunstancia no se considerará una renuncia a dicha disposición en cualquier otro momento o bajo cualquier otra circunstancia.

20. **Encabezados.** Los encabezamientos del presente Acuerdo se utilizan para conveniencia de las partes y no pretenden modificar los términos del Acuerdo.

21. **Ejecución en copias y por fax o formato PDF.** El presente Acuerdo podrá ser firmado por cada una de las partes por duplicado y cada Acuerdo firmado, en su conjunto, constituirá un Acuerdo completo. Una versión en facsímil o pdf del presente Acuerdo originalmente ejecutado será aceptada y aplicable como si fuera un original.

22. **Acuerdo Voluntario.** Los Demandantes entienden, declaran y aceptan que los Demandantes: (a) han leído detenidamente y comprenden plenamente todas las disposiciones del presente Acuerdo; (b) aceptan consciente y voluntariamente todos los términos establecidos en el presente Acuerdo; (c) aceptan consciente y voluntariamente estar legalmente obligados por el presente Acuerdo; (d) ejecutan el presente Acuerdo por su propia voluntad, sin promesas, amenazas o el ejercicio de coacción sobre ellos; (e) se les aconsejó que consideraran los términos de este Acuerdo con un abogado, tuvieron la oportunidad de ser representados por un abogado de su propia elección al decidir celebrar este Acuerdo, han consultado con un abogado antes de ejecutar este Acuerdo y declaran que su abogado les han explicado todos los términos y disposiciones de este Acuerdo; (f) se les dio un tiempo razonable para considerar sus derechos y obligaciones en virtud de este Acuerdo; (g) no se les ha hecho ninguna promesa o declaración oral para inducirles a firmar el presente Acuerdo; (h) han confiado en su propio juicio y en el juicio de su abogado al decidir firmar el presente Acuerdo; (i) son competentes para firmar el presente Acuerdo y no pueden solicitar la anulación del mismo alegando que eran incompetentes cuando lo firmaron; (j) se les ha facilitado una explicación de los términos de este Acuerdo en su lengua materna y reconocen que no pueden solicitar la anulación de este Acuerdo basándose en que no se les leyeron los términos de este Acuerdo en su lengua materna o que no entendieron los términos; y (k) están debidamente autorizados y tienen plena autoridad para firmar este Acuerdo.

**Reconozco que he recibido y revisado una versión de este Acuerdo y Exoneración, traducida al español, mi lengua materna, y que dicha versión traducida de este Acuerdo se adjunta al presente**

como Anexo B. Asimismo, declaro que, antes de firmar este Acuerdo, he tenido tiempo para revisarlo y la oportunidad de plantear a mis abogados cualquier pregunta que tuviera sobre el Acuerdo y los derechos y obligaciones de las partes en virtud del mismo.


**WALY FERREIRA**

El día ___ de diciembre de 2022, conocí personalmente a Waly Ferreira, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

**ANA LIZ**

El día ___ de diciembre de 2022, conocí personalmente a Ana Liz, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

**FRANCISCO LIZ**

El día ___ de diciembre de 2022, conocí personalmente a Francisco Liz, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

14

como Anexo B. Asimismo, declaro que, antes de firmar este Acuerdo, he tenido tiempo para revisarlo y la oportunidad de plantear a mis abogados cualquier pregunta que tuviera sobre el Acuerdo y los derechos y obligaciones de las partes en virtud del mismo.

_____
**WALY FERREIRA**

El día ____ de diciembre de 2022, conocí personalmente a Waly Ferreira, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

_____
**ANA LIZ**

El día 16 de diciembre de 2022, conocí personalmente a Ana Liz, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

Marc A. Rapaport
Notary Public, State of New York
Re. No. 02RA5029413
Qualified in New York County
Commision Expires June 20, 2022

_____
**FRANCISCO LIZ**

El día 16 de diciembre de 2022, conocí personalmente a Francisco Liz, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

Marc A. Rapaport
Notary Public, State of New York
Re. No. 02RA5029413
Qualified in New York County
Commision Expires June 20, 2022

14



**JOHNNY BONILLA**

El día ___ de diciembre de 2022, conocí personalmente a Johnny Bonilla, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

_____
**MARIO VILLANUEVA**

El día ___ de diciembre de 2022, conocí personalmente a Mario Villanueva, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

_____
**NICOLÁS BLANCO**

El día ___ de diciembre de 2022, conocí personalmente a Nicolás Blanco, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

15

_____

**JOHNNY BONILLA**

El día ___ de diciembre de 2022, conocí personalmente a Johnny Bonilla, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

**MARIO VILLANUEVA**

El día ___ de diciembre de 2022, conocí personalmente a Mario Villanueva, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

_____

**NICOLÁS BLANCO**

El día ___ de diciembre de 2022, conocí personalmente a Nicolás Blanco, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

15

**JOHNNY BONILLA**

El día ___ de diciembre de 2022, conocí personalmente a Johnny Bonilla, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

Notario público

**MARIO VILLANUEVA**

El día ___ de diciembre de 2022, conocí personalmente a Mario Villanueva, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

Notario público

**NICOLÁS BLANCO**

El día ___ de diciembre de 2022, conocí personalmente a Nicolás Blanco, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

Notario público

ANNIE CHALJUB
Notary Public - State of New York
No. 01CH6150529
Qualified in Bronx County
My Commission Expires July 31, 20__

15

*José L Hernández*

**JOSÉ HERNÁNDEZ**

El día 15 de diciembre de 2022, conocí personalmente a José Hernández, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

**RAMÓN FERREIRA**

El día ____ de diciembre de 2022, conocí personalmente a Ramón Ferreira, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

**PROPERTY MANAGEMENT GROUP, INC.**

Por: _____

Fecha: _____

16

**JOSÉ HERNÁNDEZ**

El día ___ de diciembre de 2022, conocí personalmente a José Hernández, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

_____
Notario público

**RAMÓN FERREIRA**

El día *15* de diciembre de 2022, conocí personalmente a Ramón Ferreira, quien me demostró sobre la base de pruebas satisfactorias que era la persona cuyo nombre suscribió en el ACUERDO Y EXONERACIÓN y reconoció que ejecutó el mismo en su capacidad, y que mediante su firma en el instrumento, el suscrito o la persona en nombre de la cual actuó, ejecutó el instrumento.

Marc A. Rapaport
Notary Public, State of New York
Re. No. 02RA5029413
Qualified in New York County
Commision Expires June 20, 2022

_____
Notario público

**PROPERTY MANAGEMENT GROUP, INC.**

Por: _____

Fecha: _____

16

**5 TELLERS ASSOCIATES, L.P.**


Por: _____

Fecha: _____


**5 TELLERS HOUSING DEVELOPMENT FUND COMPANY, INC.**


Por: _____

Fecha: _____


**PARKVIEW APARTMENTS, LLC**


Por: _____

Fecha: _____


**JOHN VOLANDES**


_____
**Fecha**


**PETER VOLANDES**


_____
**Fecha**